## LEVI W. GREEN v. HIGHAM, Appellant.

**Division Two, March 26, 1901.**

1. **Contract:** VALUABLE CONSIDERATION. A benefit to the party promising, or to a third person at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised, is a valuable consideration, and will support a written contract. The amount of the consideration, so it be appreciable, is immaterial.

2. ———: ———: POOLING SHARES OF STOCK. Plaintiff's brother owned 260 shares of stock of one company, which had not paid a dividend, and defendant sold to plaintiff through plaintiff's brother, 140 shares, and contemporaneously with this sale the three entered into a written agreement to pool 600 shares of the stock of said company, "until such time as said company shall begin paying regular dividends," each to stand possessed of 200 shares, each to share equally in the royalties received by defendant from another company, and in the sales of said stock. The stock was not salable in small blocks, but would be more salable in blocks of 600 shares, and hence, *held,* that, plaintiff and his brother being brokers, this assurance of a more advantageous sale was a valuable consideration for the contract; *held,* also, that the sale of the 140 shares of stock was a valuable consideration.

3. ———: POOL. The word "pool" in this contract had no technical meaning. It was simply a joint adventure of the owners of specific stock. *Held,* also, that the practical construction given by the parties themselves to the word (uniformly observed for three years, each sharing equally in defendant's royalties, and neither selling any of his stock), is a proper guide to its meaning.

4. ———: DURATION OF POOL. A contract is certain as to its duration which can by its terms be made certain, and, hence, as the contract recited that the pool of their stocks should cease when the company began paying dividends, its duration was fixed, and could not be terminated by notice.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

Green v. Higham.

AFFIRMED.

*J. M. Holmes, Albert Blair* and *Kent K. Koerner* for appellant.

(1) The pooling contract was without consideration and was purely voluntary. (2) It is too vague and indefinite in its terms to be susceptible of enforcement. (3) No time is limited, by the terms of the contract, for the duration of the pool, and hence it was terminable at the will of any party to it. Cook on Stockholders, secs. 610 and 612; Thompson's Commentaries on the Law of Corporations, secs. 6410, 644. (4) No pool was in fact ever formed under the contract.

*Lee W. Grant* for respondent.

(1) The essential idea of the contract was not to vote the stock together for the purpose of controlling the policy of the company, but was simply for the purpose of selling their stock in common. The mutual agreement of the parties is sufficient consideration to support the contract. Moss v. Green, 41 Mo. 389; Lindell Hotel v. Smith, 13 Mo. App. 14. (2) The waiver by Arthur Green of any cause of action which he might have against the defendant arising out of the sale of the 260 shares, was a sufficient consideration to support the contract. Reilly v. Chouquette, 18 Mo. 320. (3) The purchase of the 140 shares of additional stock in the Consolidated company from the defendant by Green was a sufficient consideration to support the promise of the defendant to divide his royalty with the Greens. The court found this to be the consideration inducing the defendant to sign the contract. (4) The agreement of all parties to divide the proceeds of any sale of the 600 shares equally among all the parties

was a sufficient consideration to support the contract. Defendant testified that this was the purpose of the contract. (5) The contract in controversy was not indefinite as to duration, because it necessarily terminated when Higham ceased to receive royalties from American Brake Company. His contract with the American Brake Company expired by limitation January, 1899. The contract in controversy also terminated when consolidated company should commence paying dividends.

GANTT, J.—This is a suit for an accounting and the balance thereon alleged to be due plaintiff for his share of certain royalties collected by defendant from the American Brake Company.

In March or April, 1891, defendant sold Arthur Green, a brother of plaintiff, 260 shares of the Consolidated Brake Company. Arthur Green testifies that defendant represented that the last mentioned company was in a flourishing condition and he might expect satisfactory dividends within a year. Defendant denies this.

In 1892 defendant sold to plaintiff, through his brother Arthur Green, 140 shares of Consolidated Brake stock. Arthur Green testifies that at the time of this last sale he reminded defendant of his statement that said company would pay a dividend and that it had not done so. Contemporaneously with this last sale, the two brothers and defendant entered into the following written contract:

"Whereas, C. C. Higham, of St. Louis, Missouri, Arthur H. Green, of Rochester, N. Y., and Levi W. Green, of the same place, are each the possessor of two hundred shares of the capital stock of the Consolidated Brake Adjuster Company; and

"Whereas, the said parties are desirous of forming a pool

of said stock for their mutual advantage and benefit; and,

"Whereas, said C. C. Higham agrees to divert to said pool the royalties and proceeds now received, or which may be received by him, from the American Brake Company, of St. Louis, Mo., until such time as the said Consolidated Brake Adjuster Company shall begin paying regular dividends;

"Now, therefore, be it known that we, the undersigned, do hereby form a pool consisting of six hundred shares of said capital stock of said Consolidated Brake Adjuster Company, of which we each shall stand possessed of two hundred shares, the understanding being that all benefits accruing under said pool shall be shared equally, including any sales of said stock, and that said royalties and proceeds also shall be equally shared until such time as the said Consolidated Adjuster Company shall pay dividends as aforesaid, when the said royalties shall revert to the sole use and benefit of said C. C. Higham.

"Witness our hands and seals this twentieth day of February, 1892."

The Green brothers were brokers. Under this written contract, defendant Higham from time to time received his royalties from the American Brake Company, and paid over to Arthur and Levi Green their respective shares, according to the contract, until the year 1895.

This suit is for their share of those royalties since 1895. Arthur Green assigned his interest in the contract to his brother, the plaintiff.

It should also be stated that when plaintiff bargained for the 140 shares, he did not get the certificates of stock, but defendant gave Arthur Green a declaration of trust that he held forty shares for Arthur Green's use and the above contract, and 100 shares for plaintiff's use, and these papers were all delivered to plaintiff. These transactions placed 400 shares in the Greens. The circuit court adjudged an accounting, and

the matter was referred to a referee to take the account, and upon his report judgment was rendered for plaintiff for $6,332. All proper motions for new trial and appeal were filed and overruled, and defendant appeals.

Three propositions are relied upon for a reversal of the judgment.

First, that the agreement by defendant to divide his royalties from the American Brake Company with plaintiff and his brother was without consideration and unenforcible; second, that in fact, no *pool* was formed under said agreement; third, no time was fixed for the duration of the pool, and if formed, defendant had a right to discontinue it upon notice to plaintiff and his brother.

I.    The circuit court found that the sale of the 140 shares by defendant and his brother to plaintiff was the consideration upon which the contract was based.    The gain arising from the sale of this stock was the motive on the part of defendant for agreeing to divide his royalties from the American Brake Company with plaintiff and his brother, and on their part the motive for buying additional Consolidated stock which had paid no dividend, was, to obtain the royalties which the contract secured them.    We think the evidence sustains this conclusion.    But defendant gives an additional reason why he desired to make this agreement.    The stock was not salable in small blocks and would be more salable in a block of 600 shares, and the Greens were brokers.    This being so, the mutual agreements that each should share equally in the proceeds from the sale of the stock, secured to defendant the benefit of any advantageous sale plaintiff or either might thereafter make of the stock.    These motives for the written contract constituted a valuable consideration which has been comprehensively defined to be "a benefit to the party promising, or to a

Vol 161 mo—22

third person at his request, or an inconvenience, loss, or injury, or the risk of it to the party promised." [Dr. John B. Minors Insts. 4 vol., pt. 1, p. 16; 2 Blackstone's Com., 445, n19; Smith's Contracts, 141.]

The benefit which defendant expected to receive from the sale of the stock through the mutual efforts of himself and plaintiff and his brother, satisfies the law.

The amount of the consideration, so it be appreciable, is immaterial. We think the court correctly held this objection was not tenable.

II. The objection that no "pool" was ever formed is evidently predicated upon the idea that this word had some technical meaning.

The Century Dictionary defines a pool to be "a joint adventure by several owners of a specified stock or other security temporarily subjecting all their holdings to the same control for the purpose of a speculative operation, in which any sacrifice of the shares contributed by one, and any profit on the shares contributed by another, shall be shared by all alike."

We think that the word "pool" must be read in the light of the whole contract. There is nothing in this contract that requires all the 600 shares to be transferred to one person as a trustee, or that a power of attorney should be given to any one person to hold and sell or dispose of the stock. While this might have been done, the failure to do so in no way invalidates the contract they did make. Neither party required this at the making of the contract or requested it afterwards.

"The practical construction given by the parties themselves is a proper guide to its meaning, and is of more importance than what is the abstract meaning which this court may attach to its mere phraseology." [Patterson v. Camden, 25 Mo. 21.]

The course of dealing between plaintiff and defendant

under this agreement was uniform and unquestioned, and concurred in by all parties for three years.

Whether a "pool" in a technical sense was formed is quite immaterial. A valid contract was entered into and observed by the parties thereto and must govern as to their respective rights.

III. As to the point that there was no time of duration fixed, it falls within the maxim, *"id certum est."* It was contemplated by all parties that the Consolidated company would soon begin to pay dividends and when it did, the purpose of the pool was ended, and it necessarily ended when the royalties from the American Brake Company to defendant should cease, which, as we understand, would be January 1, 1899.

As to the issuance of the 140 shares of stock to plaintiff's wife, it was done with the full knowledge and direction of defendant, who continued thereafter to pay the royalties as he had previously done.

This was not a sale in the contemplation of either of them. Nor was the temporary pledge of his 260 shares by Arthur Green a sale, within the terms of the contract. None of the parties to the contract have ever sold their Consolidated brake stock and no breach by plaintiff has occurred which would exonerate defendant from complying with the contract.

Upon a review of the whole case, we find no ground for reversing the judgment, and it is accordingly affirmed.

*Sherwood, P. J.,* and *Burgess, J.,* concur.