Mackall, 135 U. S. l. c. 167; Winn v. Grier, 217 Mo. l. c. 459; Bennett v. Ward, 199 S. W. l. c. 947.]

We think the peremptory instruction was justified on both issues by the state of the record and that the judgment is manifestly right and should be and is affirmed. It is so ordered. All concur, except *Blair, J.,* not sitting.

---

MARY JANE CRENSHAW, Appellant, v. JOEL V. CRENSHAW et al.

### Division One, December 30, 1918.

1. **DOWER: Divorce: Settlement.** A wife who has been divorced from her husband for his fault or misconduct is entitled to have dower in lands owned by him during the marriage assigned to her after his death, unless during his life she released her inchoate right of dower.

2. ———: **Release: Estoppel.** A wife may by her contract and quit-claim deed, based upon a legal consideration, release to her divorced husband, who is the owner of land and in possession thereof, her inchoate right of dower; and while inchoate dower is not the subject of grant or subject to sale under execution, such a release will operate to estop her from claiming dower after his death.

3. ———: ———: **Agreement Before Divorce: Alimony.** The husband and wife have a legal right, in view of the Married Woman's Act, before her suit for divorce is tried, to agree upon the compensation to be paid as alimony and for the release of her inchoate right of dower in the lands which he owns and of which he is in possession.

4. ———: ———: **Legal Consideration.** A settlement of the wife's suit for divorce, by which her husband's answer is withdrawn and he agrees to pay her a stated sum of money in lieu of alimony and for a release of her inchoate right of dower, entered into before the decree is granted, and followed after the decree by a quit-claim deed from her to him and the payment of the agreed money by him to her, is a legal consideration for the agreement and deed.

5. ———: ———: **Subsequent Interest: Married Woman's Act: Deed After Divorce.** A wife who executes after the decree of divorce

is granted a quit-claim deed by which she releases to her husband her inchoate dower in lands of which he is the owner and *terre tenant* is not acting under the Married Woman's Act. Her inchoate right of dower is a chose in action, and her release thereof estops her from asserting any subsequent claim thereto. Such a deed cannot be held to pass only a present interest.

6. ———: ———: ———: **Showing Lack of Consideration: Estoppel.** A deed by which a wife, after divorce, relinquishes her dower in and remises, releases and forever quitclaims unto her husband certain lands and relinquishes all her interest, whether of dower or otherwise, in said lands, to her husband, who is the owner and *terre tenant*, so that neither she nor any other person for her shall hereafter claim any right or title to said premises, operates as an estoppel, and in view of such recitals she cannot show want of consideration for the purpose of defeating their operative effect.

7. ———: ———: **Sufficient Consideration.** Where the wife, in the presence of her father, against the advice of her counsel, agreed, in settlement of her suit for divorce, to accept a named sum of money for a release of her inchoate right of dower in her husband's lands and in lieu of alimony, and, after the decree was granted, executed a quitclaim deed to him and received and retained the full consideration agreed upon, it will not be held that the consideration was not sufficient, whether or not said sum was less than she may have been entitled to in the settlement, no fraud being shown or charged.

Appeal from Lincoln Circuit Court.—*Hon. Edgar B. Woolfolk*, Judge.

Affirmed.

*Jos. R. Palmer, Hostetter & Haley* and *Creech & Penn.* for appellant.

(1) The elements entitling a woman to dower in Missouri are (1) a lawful marriage, (2) seizin of the husband, or of some other person to his use, during the marriage, of an estate of inheritance in the land, and (3) death of the husband prior to the death of the wife. Murray v. Scully, 259 Mo. 57; 3 Words and Phrases, 2188. (2) When a divorce is granted for the fault of the husband the wife's dower is not barred. Scales v. Scales, 65 Mo. App. 293; Murray v. Scully, 259 Mo. 57; Givens v. Marbut, 259 Mo. 223; Hunt v. Thomp-

son, 61 Mo. 148; R. S. 1909, sec. 359. (3) The wife who has been divorced for the husband's fault or misconduct is not entitled to dower until the death of the husband; during the husband's life the dower is inchoate, and not until his death does it become consummate. Hunt v. Thompson, 61 Mo. 148. (4) The inchoate right of dower is not an interest in nor title to real estate, and is not the subject of relinquishment, release or conveyance by the wife during the life of the husband, except by some one of the methods authorized by the statute. Tiedeman's Real Property (3 Ed.), sec. 85; 4 Words and Phrases, p. 3493; 14 Cyc. 925; McCrillis v. Thomas, 110 Mo. App. 703; Mining Co. v. Baker, 170 Mo. App. 457; Brannock v. Magoon, 216 Mo. 722; Teckenbrock v. McLaughlin, 246 Mo. 711; First Nat. Bank v. Kirby, 269 Mo. 285; 13 Cyc. 688; Brawford v. Wolf, 103 Mo. 391. (5) The quitclaim deed of Mrs. Crenshaw only passed the interest she then had, and any interest, estate or title that thereafter accrued to her did not inure to the grantee or those claiming under him, and this notwithstanding the Married Woman's Act. Bland v. Windsor, 187 Mo. 137; State Bank of St. Joe v. Robidoux, 57 Mo. 450; Ford v. Unity Church, 120 Mo. 498; Hendricks v. Musgrave, 183 Mo. 309; Wilson v. Fisher, 172 Mo. 15; Brawford v. Wolfe, 103 Mo. 397; Conrey v. Pratt, 248 Mo. 576; R. S. 1899, sec. 901. (6) The statute giving a widow the right to assign dower in the real estate of which her husband died seized before it has been admeasured to her, refers to the dower interest existing after the husband's death and not to her inchoate dower. R. S. 1909, sec. 346; Brannock v. Magoon, 216 Mo. 722. (7) A quitclaim deed passes no interest, title or estate not in existence at the date of its execution. (8) The deed given by Mrs. Crenshaw would not estop her to claim dower. The deed was without consideration. To work an estoppel there must be such conduct on the part of one party as to induce the other party to act, relying on such conduct, and resulting to his injury. 2 Words and Phrases (2 S.), p. 337; 3 Words and Phrases, p. 2498;

16 Cyc. 726; DeBerry v. Wheeler, 128 Mo. 90; Osburn v. Court of Honor, 152 Mo. App. 652; Harrison v. McReynolds, 183 Mo. 548; 21 Cyc. 1343; Bank v. Ragsdale, 171 Mo. 185. (9) The fifteen hundred dollars allowed Mrs. Crenshaw as alimony for the support of herself and child was not dower, the court had no power to require the relinquishment of her dower, and this allowance of alimony could not be a consideration for the deed she executed. Scales v. Scales, 65 Mo. App. 292; 1 Words and Phrases (2d S.), 181. (10) The quitclaim deed viewed in the light of a contract was invalid, because the consideration was nothing more than the law would have cast upon her at her husband's death and was inadequate to bind her and preclude her claim for dower, the consideration not having been paid. Spratt v. Lawson, 176 Mo. 181; Egger v. Egger, 225 Mo. 116. (11) The quitclaim deed was not effectual as an estoppel, it not having been ratified subsequent to the husband's death. 14 Cyc. p. 932; Saunders v. Blythe, 112 Mo. 5. (12) Dower is favored in a high decree by the law as the reward of chastity; in doubt, the response is in favor of dower. Blevins v. Smith, 104 Mo. 588; Chrisman v. Linderman, 202 Mo. 614.

*Sutton & Huston* for respondents.

(1) The conclusion is inevitable from a consideration of the authorities and the mandates of judicial reason, that a dowress who is a *femme sole* may, by her separate deed, release her inchoate dower to her divorced husband, who is at the time the *terre-tenant* of the principal estate. Smith v. Pendell, 19 Conn. 112; Miller v. Emans, 19 N. Y. 390; Williams v. Esten, 179 Ill. 274; Blain v. Harrison, 11 Ill. 385; Summers v. Babb, 13 Ill. 483; Jackson v. Vanderheyden, 17 Johns. 167; Johnson v. Shields, 32 Me. 424; Shepherd v. Howard, 2 N. H. 507; Thatcher v. Howland, 2 Met. 41; Moore v. Harris, 91 Mo. 621; McAnaw v. Tiffin, 143 Mo. 676; Tatro v. Tatro, 18 Neb. 397;

Nichols v. Park, 78 N. Y. App. Div. 95; Green v. Putnam, 1 Barb. 506; Moloney v. Horan, 53 Barb. 38; Brannock v. Magoon, 216 Mo. 729; McCrillis v. Thomas, 110 Mo. App. 703; Littlefield v. Crocker, 30 Me. 193; Kitzmiller v. Van Rensselear, 10 Ohio St. 64. (a) It is a well established rule at common law that contingent future rights and interests in real estate, though not alienable, could be released to the *terre-tenant* of the freehold. Smith v. Pendell, 19 Conn. 112; Miller v. Emans, 19 N. Y. 390; Williams v. Esten, 179 Ill. 274. (b) So, a dowress, though she could not assign her dower to another so as to invest him with it, she could release it to the *terre-tenant* of the principal estate, and the same rule prevails in modern decisions. Blain v. Harrison, 11 Ill. 385; Moore v. Harris, 91 Mo. 621; McAnaw v. Tiffin, 143 Mo. 676; Summers v. Babb, 13 Ill. 483; Jackson v. Vanderheyden, 17 Johns. 167; Johnson v. Shields, 32 Me. 424; Shepherd v. Howard, 2 N. H. 507; Thatcher v. Howland, 2 Met. 41. (c) A right of dower, until legally assigned, is a right resting in action only. A widow may release it, but she cannot before dower is assigned invest another person with the right to maintain an action on it; nor can she convey or assign it. Green v. Putman, 1 Barb. 506. (d) But her deed, though it may not operate as a grant, will operate as an estoppel against her in favor of her grantee and those claiming under such grantee. Maloney v. Horan, 53 Barb. 38; Brannock v. Magoon, 216 Mo. 729; McCrillis v. Thomas, 110 Mo. App. 703; Littlefield v. Crocker, 30 Me. 193; Kitzmiller v. Van Rensselear, 10 Ohio St. 64; Blain v. Harrison, 11 Ill. 385. (e) A decree *a vinculo matrimonii* dissolves the marriage and puts an end to the relation of husband and wife, and to all property rights, including the right to dower, except when it is expressly preserved by statute. Tatro v. Tatro, 18 Neb. 399. (f) Dower does not attach to lands acquired by a husband after his wife has obtained a divorce. Nichols v. Park, 78 N. Y. App. Div. 95. (g) The operative words of the usual form of quitclaim deed in common use are sufficient

operative words of conveyance, and such a deed is as effectual to transfer title as any other form of conveyance, and conveys every shred of right, title or interest the grantor may have in the premises. McAnaw v. Tiffin, 143 Mo. 676; Weissenfels v. Cable, 208 Mo. 534; Chew v. Keller, 171 Mo. 225; Wilson v. Albert, 89 Mo. 543; Ennis v. Tucker, 78 Kan. 55; Livingstone v. Murphy, 187 Mass. 315; Kyle v. Cavanaugh, 103 Mass. 356; Pinkerton v. Fenelon, 131 Wis. 440. (h) While the consideration of a deed is open to investigation and explanation for some purposes, yet in the absence of fraud or mistake the want of consideration cannot be shown against a recital of a consideration in the deed for the purpose of defeating the operative words of the deed. Weissenfels v. Cable, 208 Mo. 534; Chambers v. Chambers, 227 Mo. 287; Bobb v. Bobb, 89 Mo. 419; Strong v. Whybark, 204 Mo. 348; Russell v. Robbins, 247 Ill. 510; Burleigh v. Coffin, 22 N. H. 118. (2) The same contract was amply sufficient to constitute a valid and binding contract, supported by a valuable consideration, actually paid to the plaintiff and received and appropriated by her whereby she is now estopped to claim such dower. Owen v. Yale, 75 Mich. 258; Tatro v. Tatro, 18 Neb. 399; Bourne v. Simpson, 9 Ben. Mon. 457; Marvin v. Collins, 48 Ill. 156; Adams v. Storey, 135 Ill. 448; Garbut v. Bowling, 81 Mo. 214; Ellis v. Diddie, 1 Ind. 561; Wood v. Seely, 32 N. Y. 105; Reed v. Morrison, 12 Serg. & R. (Pa.) 18; Allen v. Allen, 112 Ill. 323; Collins v. Woods, 63 Ill. 285; Scales v. Scales, 65 Mo. App. 283; Spratt v. Lawson, 176 Mo. 181; Egger v. Egger, 225 Mo. 143.

RAILEY, C.—On February 19, 1915, plaintiff filed in the circuit court of Lincoln County, Missouri, her petition for the assignment of dower in the lands of her husband, Wm. N. Crenshaw, described in the petition. The petition alleges, and the separate answer of Joel V. Crenshaw, executor of the estate of Wm. N. Crenshaw, et al., admits, that plaintiff and said Wm. N. Crenshaw were married in Lincoln County, Missouri, on

December 15, 1896; that on March 28, 1898, she was, in the circuit court of said county, divorced from said Wm. N. Crenshaw; that in the trial of said divorce case, the court found plaintiff to be the innocent and injured party, and entitled to the relief prayed for in her petition. The petition alleges, and said answer admits, that said Wm. N. Crenshaw died on January 5, 1915, the fee simple owner of the real estate described in petition. The petition alleges, and said answer admits, that Wm. N. Crenshaw died leaving a will, which was duly probated in said county, and letters testamentary issued to Joel V. Crenshaw on January 11, 1915, and that by the terms of said will said real estate was devised to defendants Martha E. Chewning, Nancy Lee Tiller, Joel V. Crenshaw, Wm. Lee Crenshaw, Edna W. Moorehead, Lutitia T. Magruder and Lucy M. Magruder; and that to Eldridge J. B. Crenshaw is there bequeathed the sum of $750, and that as to plaintiff, said Wm. N. Crenshaw died intestate. The petition alleges, and said answer admits, that Martha E. Chewning and Nancy Lee Tiller are daughters, and Joel V. Crenshaw and Eldridge J. B. Crenshaw are sons, of said Wm. N. Crenshaw, deceased; that William Lee Crenshaw is the grandson of said Wm. N. Crenshaw, being the only heir of William Crenshaw, a deceased son, and that Edna W. Moorehead, Lutitia T. Magruder and Lucy M. Magruder are granddaughters of the said Wm. N. Crenshaw, being the only heirs of Mary Magruder, a deceased daughter. The petition further alleges that plaintiff's dower in said land has never been assigned or set apart to her, and that defendants, on January 11, 1915, entered into possession of said real estate and deforced plaintiff of her right therein; that since said time they have been and now are in possession of said lands, to plaintiff's damage in the sum of five hundred dollars; that the monthly value of the rents and profits of plaintiff's dower estate in said lands is $200 per month. The petition alleges that Eldridge J. B. Crenshaw and Lucy M. Magruder are minors, under the age of twenty-one

years, and the court is asked to appoint a guardian *ad litem* to represent them in the trial of the cause. Plaintiff prays judgment for the assignment of her dower in said premises, for five hundred dollars as damages aforesaid, and for the monthly rents, profits and costs of suit.

The separate answer of Joel V. Crenshaw, executor, et al., after admitting the allegations of the petition, as heretofore stated, denies the truth of every other allegation therein contained. Said answer then alleges, by way of affirmative defense, that at the time of the divorce proceedings aforesaid, and after a decree of divorce had been granted to plaintiff, and on the same day it was granted, the plaintiff herein executed, acknowledged and delivered to said Wm. N. Crenshaw a deed to the lands mentioned in the petition, whereby she released all her dower, interest and estate of every kind to all lands that might be subsequently acquired by said Wm. N. Crenshaw, and that the consideration expressed in said deed was the sum of fifteen hundred dollars. Respondents deny that she has any dower in said lands and aver that plaintiff is estopped by her said deed of conveyance and by her conduct from now claiming dower in said lands, etc.

Frank Howell, who had been appointed guard'an *ad litem* for the minors, Lucy M. Magruder and Eldridge J. B. Crenshaw, stated, in an answer for them, that he had no knowledge or information of the matters stated in the petition sufficient to form a belief, and therefore called for strict proof.

The reply of plaintiff is a general denial and it further states that no consideration for the alleged deed moved from the grantee therein to the plaintiff. It denies that said grantee, or any person for him, or in his behalf, paid, as consideration for said deed, to the plaintiff, the sum of fifteen hundred dollars, as expressed in said deed, or any other sum.

The defendants assumed the burden of proof, and read in evidence the deed mentioned in the separate answer aforesaid. It is a quitclaim deed, *dated March*

*28, 1898,* from plaintiff to Wm. N. Crenshaw, for the expressed consideration of fifteen hundred dollars, to her paid by said Wm. N. Crenshaw, the receipt of which is thereby acknowledged. It further recites, that she "does by these presents, relinquish her dower in, remise, release and forever quitclaim unto" the said Wm. N. Crenshaw, the lands described in the foregoing petition. After describing the above land, the deed recites that "said Mary J. Crenshaw hereby relinquishes all of her interest whether of dower or otherwise in all property real or personal owned by said Wm. N. Crenshaw, whether described correctly herein or not." The deed was signed by plaintiff, was duly acknowledged on March, 1898, and filed for record in said county on the same day.

Defendants then rested in chief.

Plaintiff introduced in evidence the divorce decree, heretofore mentioned. The decree recites that defendant failed to appear to the action, and that the court found she was the innocent and injured party in entering said decree. It gave the care and custody of their infant child, named Eldridge J. B. Crenshaw, to plaintiff and relieved the husband from any further support and maintenance of said child. It decreed that defendant, by way of alimony and for the support and maintenance of said child, should pay said plaintiff the sum of fifteen hundred dollars, in equal installments of five hundred dollars each. The first five hundred was to be paid within one year from the date of said decree; the second five hundred dollars, in two years, and the third five hundred dollars, in three years. Each of said sums was to bear interest at the rate of six per cent per annum from the date of said decree. The defendant was given the privilege of paying said sums, or any part thereof, at an earlier date if he desired to do so.

Plaintiff introduced the record entry in the divorce case, showing that on October 23, 1897, there was allowed said plaintiff as alimony *pendente lite* for twenty-eight weeks board, $84; for attorney's fee, $250; for clothing for plaintiff and said infant, $40; for taking

depositions and other preparations for trial, $50; for nurse for child, $50, and for pin money, $25, making a total of $499, which was to be paid in installments.

Mr. O. H. Avery, who had been attorney for plaintiff in the divorce case, testified that the $1500 mentioned in the decree was not paid in cash, but was settled by defendant therein, giving three notes of $500 each; that aside from the $499, the above sum of $1500 was all that defendant paid in connection with the divorce suit. On cross-examination, he said there was a settlement between the parties to the divorce case; that plaintiff and defendant were present, as well as counsel representing them respectively. He gave it as his remembrance that defendant had formerly filed an answer in the divorce case, which was withdrawn; thereupon plaintiff was to sign a deed conveying all of her right to defendant's property, both real and personal; that said agreement was carried out; that defendant Crenshaw had been arrested for assault, and that was included in the settlement. He said that he talked with plaintiff and tried to persuade her not to make the settlement, as he could do better for her. He said her father was there and advised a settlement. Avery further testified, as follows:

"Q. Was this deed the result of that settlement? A. That deed was the result of that settlement.

"Q. And your understanding was from your talk with her and with her father who was there talking to her that you were making a settlement of all her property rights, real and personal? A. Yes, sir.

"Q. What was she to receive? A. She was to receive fifteen hundred dollars in addition to what she had received, five hundred dollars.

"The Court: For suit money and alimony pending the suit, and support money for the children? A. Four hundred and ninety dollars; I called it five hundred dollars; I though it was five hundred, but I notice it is $499, and she was to relinquish all interest that she had in his property, both real and personal; that

was the contract, and I think that is in the deed; I think it was put in there that day."

He further testified as follows:

"Q. That settlement was closed up and the decree rendered and the deed made? A. The decree was rendered here in court and the deed itself was signed in the circuit clerk's office, a few minutes after that; I was present; I was with her.

"Q. Where was this settlement made you have reference to? A. That settlement was made in the office that you now occupy.

"Q. Who was there and represented Mrs. Crenshaw? A. You and her father; my recollection is that her father was there; I was in the front room.

"Q. This deed was made there in consequence of that settlement and that payment of fifteen hundred dollars? A. Yes, sir; and immediately after the consummation of that agreement she came up here and I remember the decree was rendered and approved, and we went down into the circuit clerk's office and the deed was signed in the circuit clerk's office and acknowledged by Mr. Sitton, who was then circuit clerk.

"Q. That was after the decree had been rendered? A. Yes, sir.

"Q. The decree was rendered and approved? A. Mrs. Crenshaw testified, and I don't know, I think perhaps her father testified; Mrs. Crenshaw testified, of course."

Mr. R. H. Norton was sworn as a witness and testified, in regard to above settlement, as follows:

"A. The suit was brought by Mrs. Crenshaw for divorce against W. N. Crenshaw and resulted in considerable litigation and exceeding bitterness; there was a fight and a hard fight for the allowance of ailmony, and it being apparent that these parties couldn't live together, there was some attempt to settle the entire matter, between the parties of the differences; a conference took place in my office between Mr. and Mrs. Crenshaw, Mr. True, Mr. Dunn, who represented Mr.

Crenshaw, and myself. I have no recollection of Murphy being there and I don't think he was in the case, I don't think the papers will show he was in the case. It was determined that they had better settle their property rights and settle that case; it was agreed, as I recollect, that the answer would be withdrawn and that the case would be heard and the decree rendered, after proof supporting it. It was not agreed they should have a divorce, but it was a recognized fact a divorce would be granted and must be granted, and in the settlement of their property rights, Mrs. Crenshaw agreed to accept fifteen hundred dollars and release all her interest of every kind whatsoever and settle the whole matter between them; that was the agreement between the parties, and as a result of that agreement the case was heard and the decree rendered, and in carrying out the agreement the deed was made and either the money paid or notes executed, I don't remember whether notes were given or money paid; at any rate, in a very short time the money was all paid, if not that day; I don't remember whether notes were given or not, but my impression is that it was paid in cash; possibly there were notes given, but I am not sure about that matter. I think that's all I have to testify to.

"The Court: Was this additional amount paid too, $499? A. That was paid before that."

J. V. Crenshaw was sworn as a witness. He testified that his father, Wm. N. Crenshaw, died April 5, 1915; that he owned at that time something like 526 acres of land in Lincoln County; that he owned all these lands at the time his second wife obtained her divorce; that in his opinion the above land was worth about $60 per acre; that the reasonable annual rental value of same was $4 or $5 per acre.

The evidence clearly shows that defendant in the divorce case paid the costs, the $499, the $1500 heretofore mentioned, and that he paid nothing more.

The foregoing covers substantially all the evidence introduced at the trial.

On June 19, 1915, the court found the issues in favor of defendants, and in due form entered judgment accordingly. Plaintiff, in due time, filed her motions for new trial and in arrest of judgment. Both of said motions were overruled and the cause duly appealed by her to this court.

I. There is substantially no controversy as to the facts in this case, as shown by the preceding statement. · Section 359, Revised Statutes 1909, provides, that:

Dower.
"If any woman be divorced from her husband, for the fault or misconduct of said husband, she shall not thereby lose her dower; but if the husband be divorced from the wife, for her fault or misconduct, she shall not be endowed."

Unless, therefore, the plaintiff released to her former husband her inchoate right of dower in the lands described in petition, she is·entitled to have her dower interest in said lands assigned in this proceeding.

II. It may be conceded that, under our law, the inchoate right of dower in the husband's lands is not the subject of grant, nor liable for sale under execution, but it is equally as well settled, in this jurisdiction, that the wife may by her contract and quitclaim deed,

Release.
based upon a legal consideration, *release* to the husband, who is the owner of the land and in possession thereof, her inchoate right of dower therein. Plaintiff having executed a quitclaim deed to the former husband conveying her inchoate right of dower to his lands, under the circumstances aforesaid, if there was a valid consideration therefor, is estopped from claiming dower in said lands after his death. [Lemon v. Lemon, 201 S. W. l. c. 106; Brannock v. Magoon, 216 Mo. l. c. 729; Bush v. Peirsol, 183 Mo. l. c. 505; Carey v. West, 139 Mo. l. c 177; Moore v. Harris, 91 Mo. l. c. 621-2; Magwire v. Riggin, 44 Mo. l. c. 515 and cases cited; McCrillis v. Thomas, 110 Mo. App. l. c. 703-4.]  To the same effect are many decisions out-

side of this State, a number of which are cited in respondents' brief.

III.    Did the plaintiff and her husband have the right, before the divorce case was tried, to agree upon the *compensation* which should be paid as alimony and for the release of plaintiff's inchoate right of dower in the lands mentioned in petition? Under the authorities cited in the preceding proposition, plaintiff's inchoate right of dower at that time was simply a *chose in action*. Since the adoption of the Married Woman's Act of 1889, and by virtue of Section 8304, Revised Statutes 1909 (R. S. 1899, sec. 4335), a married woman has the *legal right* to make such an agreement as that which plaintiff made in reference to the divorce proceedings heretofore set out. [Smelser v. Meier, 271 Mo. l. c. 185-6, 196 S. W. 22; Bank v. Kirby, 269 Mo. l. c. 292-3, 190 S. W. 597.]

**Power to Contract.**

There is no fraud charged or shown in respect to the above agreement. On the contrary, it was entered into by plaintiff voluntarily and contrary to the advice of her counsel at the time. The defendant's answer was then on file, which put in issue the allegations of her petition in regard to the grounds of divorce as well as the question of alimony and other issues which might have arisen in the case. While of course they had no right by collusion to have a decree of divorce entered in her behalf, they did have the legal right to agree upon alimony and the release of plaintiff's inchoate right of dower to her husband, who was then the *terre tenant,* as well as the owner of the lands described in petition, if said agreement was based upon a valid consideration.

IV.    Were the foregoing agreements and the quitclaim deed executed by plaintiff to her former husband pursuant thereto, supported by a valid consideration? Both were free to contract with each other. She and defendant had been married less than eighteen months

**Legal Consideration.** when the decree of divorce was obtained. She was his second wife, and evidently had but little, if anything, to do with the accumulation of the real estate held by her husband, during their brief married life. The question of alimony was an open one, which required proof in reference thereto, and which was dependant upon the exercise of a sound judicial discretion by the trial court in allowing same. With the answer on file she would have been put to her proof, not only as to the merits of the controversy, but likewise in respect to the alimony claimed. In other words, she was confronted with a *lawsuit*, and through the foregoing settlement wes relieved from a contest as to the merits as well as concerning the question of alimony. The defendant in the divorce case, pursuant to said settlement, withdrew his answer, and paid the $1500 agreed upon. Pursuant to the same settlement, the plaintiff executed the quitclaim deed releasing to said defendant her inchoate right of dower in the lands mentioned in petition, and received a moneyed consideration for same. She was not only settling a lawsuit, but by virtue of the settlement, was obtaining a speedy trial, without any right of appeal being open to defendant. We are of the opinion, that the foregoing agreement was supported by a valid consideration.

V. It is contended by appellant, that: "The quitclaim deed of Mrs. Crenshaw only passed the interest which she then had, and any interest, estate or title **Present Interest.** that thereafter accrued to her did not inure to the grantee or those claiming under him, and this notwithstanding the Married Woman's Act."

Mrs. Crenshaw was not acting under the Married Woman's Act when she executed and delivered to her former husband the quitclaim deed aforesaid. She was divorced prior to the execution of said instrument, and had the right to convey her inhcoate right of dower to the former husband as the *terre tenant* and owner

of the lands mentioned in petition. As heretofore stated, the interest which she had at the time of the execution of said quitclaim deed, was simply a *chose in action*. The quitclaim deed was amply sufficient to convey this interest to the *terre tenant* and thereby release to the latter her inchoate right of dower in said lands. Under the authorities heretofore cited, she is estopped by reason of the foregoing from asserting any claim of title to said lands since the execution and delivery of said deed. The quitclaim deed having passed the title to her *chose in action* to the former husband, at the time of its execution, estopped her from claiming dower after her former husband's death. [See authorities supra.]

VI. It is likewise insisted by appellant that: "The deed given by Mrs. Crenshaw would not estop her to claim dower. The deed was without consideration. To work an estoppel there must be such con-

**Estoppel.** duct on the part of one party as to induce the other party to act, relying on such conduct, and resulting to his injury."

The quitclaim deed, after describing the grantor and grantee, recites:

"That the said party of the First Part in consideration of the sum of Fifteen Hundred Dollars, to her paid by the said party of the Second Part, the receipt of which is hereby acknowledged, does by these presents, relinquish her dower in, remise, release and forever quitclaim unto the said party of the second part the following described lots, tracts or parcels of land." [Here follows a description of the lands as described in petition.] . . . "And said Mary J. Crenshaw hereby relinquishes all of her interest whether of dower or otherwise in all property, real or personal owned by said Wm. N. Crenshaw, whether described correctly herein or not. . . .

"So that neither the said party of the first part nor her heirs nor any other person or persons for her or in her name or behalf, shall or will hereafter claim

or demand any right or title to the aforesaid premises or any part thereof, but they and every one of them shall by these presents be excluded and forever barred.''

This deed was filed for record on the day of its execution.

There is neither fraud nor mistake charged or shown in the case. While the consideration of a deed is open to investigation and explanation for some purposes, yet, the want of consideration cannot be shown in view of the foregoing recitals, *for the purpose of defeating the operative words of said quitclaim deed.* [Bobb v. Bobb, 89 Mo. l. c. 419; Strong v. Whybark, 204 Mo. l. c. 348; Weissenfels v. Cable, 208 Mo. l. c. 534; Chambers v. Chambers, 227 Mo. l. c. 287-8; Anderson v. Cole, 234 Mo. l. c. 4; Harrison v. Moore, 199 S. W. (Mo.) 190-1; Russell v. Robbins, 247 Ill. 510; Burleigh v. Coffin, 22 N. H. 118.]

VII. It is strenuously insisted by appellant that, notwithstanding the original agreement between the plaintiff and her husband, entered into after mature deliberation, followed by the withdrawal of defendant's answer therein, the entry of the decree pursuant thereto, the payment of the consideration agreed upon, and the execution of the quitclaim deed to the *terre tenant* releasing her inchoate right of dower, said agreement is invalid, because not based upon a legal consideration. In support of this contention, Spratt v. Lawson, 176 Mo. l. c. 181, and Egger v. Egger, 225 Mo. 116, are strongly relied on as sustaining the above view.

**Sufficient Consideration.**

We are of the opinion that the facts in each of said cases distinguish them from the one at bar. In the Egger case, the wife was old, unfamiliar with business and dealing with her husband, with whom she was living at the time, in the execution of the agreement relating to their property rights. VALLIANT, J., upon page 139, in discussing this subject, said: ''Under the circumstances of this case why should not the law

of fiduciary relations be taken into account when we come to pass judgment on this contract?"

In the case at bar, the parties were dealing at arms-length, with a divorce proceeding pending them at the time. The plaintiff was represented by able counsel and her own father, when the settlement was made. It was the desire of both plaintiff and defendant to get rid of a law suit and settle their property rights outside of court. *The plaintiff received the full consideration of $1500 agreed upon, and both parties formally carried out their agreement.* In the Egger case, the husband was to make a will giving her $75 per month out of his estate during her life, and was to set apart in his will $20,000 for that purpose.

Judge VALLIANT, upon pages 143-4, in considering the question as to whether there was a valid consideration to support the agreement, said:

"If she knew at the death of her husband she would be entitled to dower in real estate of the value of $100,000 and one-sixth of personal property to the value of nearly $200, 000, and that her husband could not by his will deprive her of it, and yet agreed that if he would make a will giving her $75 a month during her life she would take that in lieu of the large share of the estate which the law gave her, it was a mere *nudum pactum.* There was nothing given her at the time; there was only a promise to give her out of his estate by will at his death something very much less than what would have been her own by right under the law.

"If instead of a mere promise to make a will the contract had provided for the then transference to a trustee of mortgage notes to the amount of $20,000, to secure her the monthly sum of $75 for life to guard against possible vicissitudes of fortune, a different case would be presented, as to which we say nothing. Here we have a mere promise to make a will giving her less than she would be entitled to if there was no will."

In other words, if Mr. Egger had outlived his wife, she would have received nothing under the contract,

and if she outlived him, was to receive less than the law absolutely allowed her.

The Spratt-Lawson case supra, in principle, is like the Egger case.

We are of the opinion, that the facts in both the above cases are so totally different from those in the case before us, that they cannot be considered as authority in support of the contention that the settlement was not based upon a valid consideration.

VIII. We are not advised as to the merits of the controversy between plaintiff and her former husband, nor is it necessary for us to consider the same in deciding this case. It is possible that she may have been entitled, in the settlement, to more than she received, but that was a question for *her* to consider, while conferring with her counsel and father in respect to this matter. Against the protest of her counsel and with the assurance from him that she could get more by litigation, she voluntarily settled with Wm. N. Crenshaw, upon the terms heretofore mentioned, and received the full consideration contracted for in said settlement, with the understanding that she had released to her former husband as the owner and *terre tenant* of said lands, her inchoate right of dower therein.

Upon a full consideration of all the questions presented herein, we are of the opinion, that the judgment below was for the right parties. It is accordingly affirmed.

*Brown, C.* concurs in result.


PER CURIAM:—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All of the judges concur; BOND, J., in result.