MARY E. RUDD, Appellant, v. CHARLES RUDD.—2 S. W. (2d) 585.

Court en Banc, February 4, 1928.

*Stewart & Stewart* for appellant.

*James C. Dorian* and *Elmer O. Jones* for respondent.

WALKER, C. J.—This is a suit in ejectment to recover the possession of one hundred acres of land in Scotland County. The parties are wife and husband. Upon a change of venue a trial was had to a jury in Knox County, resulting in a verdict for the defendant. From the judgment rendered thereon the plaintiff has appealed.

The parties were married in February, 1891. After their marriage the wife, under her father's will, became invested, in 1904, with a life estate, remainder in her bodily heirs, in the one hundred acres of land in controversy. After repeated differences the parties separated in 1904. The wife brought suit for a divorce which was granted in the Circuit Court of Scotland County, in which the court refused to make any finding in regard to the separate property rights of the plaintiff. This decree (contrary to the finding of the trial court) was reversed by the St. Louis Court of Appeals (238 S. W. 537), on the ground that the facts did not authorize the same and because the trial court exceeded its jurisdiction in the appointment of the husband as a receiver for the wife's property. Subsequently the parties became reconciled towards each other, renewed their marital relations and continued to live on the wife's land. Upon the renewal of the amicable relations between the parties they entered into the following agreement:

"This contract made and entered into this the 6th day of December, 1904, by and between Mary E. Rudd of the one part and Charles Rudd of the other part, both of Scotland County, Missouri:

"Witnesseth: Whereas certain difficulties have existed heretofore between the said parties who are husband and wife and this difference having been fully settled between them, and the said Mary E. Rudd being the owner of 100 acres of land and a house and three lots in Gorin in her own right and being desirous that it should be properly managed and handled for the benefit of the family, she contracts and agrees with the said Rudd that he may take charge of the land and the rents and profits arising therefrom and handle and manage the same for the best advantage of their family, and shall be free from the control of any one except himself, and agrees that they shall work together to the best advantage of themselves and their children, and the said Rudd agrees upon his part to look to her interests and the interests of the family and to use the rents and profits and the income to the improvement of the real estate and the support of the family and for their best interests.

"This agency to continue as long as said Rudd shall use good judgment and good management.

"Witness our hands this 6th day of December, 1904.

"MARY E. RUDD,

"CHAS. RUDD."

From the date of this instrument the parties lived together with their three children on the land in question, until October, 1918, when they again separated. After an ineffectual effort at a reconciliation on the part of the wife, a few days after the last separation this suit was brought with the result stated. Since October 15, 1918, the parties have lived apart. The husband has continued in the possession and use of the land, receiving the income therefrom, except $25 per month, which he has paid to or caused to be placed to the credit of the wife. The hearing was burdened with much irrelevant testimony. The trial was conducted and determined upon the defendant's theory that under the agreement the plaintiff was not entitled to the use and occupation of the land unless she lived with the defendant as his wife.

I. Dismissing from consideration much of the matter introduced as evidence at the trial, some of which however has been incorporated in the foregoing statement by way of explanation of material facts, we come to a consideration of the character, to be determined from its context, of the so-called contract or agreement made by these parties, and, as a consequence, its legal effect, if any, upon their respective rights and interests.

Under our statute (Secs. 7323-7328, R. S. 1919), a married woman's legal status is that of a *femme sole,* so far as to enable her to transact her own business and to contract and be contracted with in regard to her own property, personal or real. This right is not

limited to actions against third persons, but permits a man and his wife to contract with each other or to sue and be sued by each other. [Cole v. Cole, 231 Mo. 236; O'Day v. Meadows, 194 Mo. 588, 92 S. W. 637; Grimes v. Reynolds, 184 Mo. 679, 83 S. W. 1133; Rice-Stix & Co. v. Sally, 176 Mo. 107, 75 S. W. 398.] The right thus conferred is governed by the same rules by which the validity of other contracts is to be measured. One of the essentials to the creation of a valid contract is a consideration; this requisite may be briefly defined as importing, from the terms of the instrument, the surrender of a legal right or the incurring of a legal obligation. [Starr v. Crenshaw, 279 Mo. 344; George v. Railroad, 214 Mo. 551; Clark v. Hackfeld & Co., 16 Hawaii, 53.] More elaborately stated, a consideration is any benefit derived from or agreed to be conferred upon one party to a contract by another to which previously the beneficiary was not entitled. [Green v. Higham, 161 Mo. 333, 61 S. W. 798; Guerra v. Porto Rico Treas., 8 Porto Rico, 280; Cottage St. M. E. Church v. Kendall, 121 Mass. 528; Eastman v. Miller, 113 Iowa, 404; Grant v. Isett, 81 Kan. 246.]

"The settlement of differences" referred to in the agreement between the parties hereto means nothing more than the resumption of marital relations; the obligations and duties incident to that status under the law continued during the separation—there being no divorce—with like force and effect as if they had been living together as husband and wife; thus continuing, their marital duties and their property rights were not changed by the reconciliation. As we said, in effect, in In re Woods Estate, 288 Mo. 588, 232 S. W. 671: "A husband's prime and paramount duty which begins with the marital relations and ends with its severance is to support and maintain his wife and children in such a manner as is consistent with his situation and condition in life." This is an inseparable incident of the marital relation. Imposed by law and sanctioned by civilization, the duties it enjoins are not the subject of contract between the parties. In the instant case the wife was invested with the title to the land used and occupied by her husband and herself as a homestead. It was his duty to provide a home and to support her and their children. This duty was not lessened but its performance by the husband was aided by the ownership of the home by the wife. That she might have, under the liberal authority of the Married Women's Acts, in this reconciliation, in a contract importing a valid consideration, transferred the property to him there can be no question. [In re Woods Estate, 288 Mo. 1. c. 601; Crenshaw v. Crenshaw, 276 Mo. 471, 208 S. W. 249.] This was not done or attempted to be done, but instead, it was attempted to empower him to take charge of her land which he and she then occupied and used as a homestead, and to "handle and manage the same to the best interests of the family, free from any control, except that of the wife" in

consideration of which attempted grant of power he was "to look to her interests and the interests of the family and use the rents and profits and the income to the improvement of the real estate and the support of the family and for their best interests." To this is added the right of the wife to terminate what is termed his agency when in her opinion he ceases to use good judgment and good management.

Nothing is required by this agreement which the law does not impose upon the husband as prime and paramount duties arising out of and necessarily incident, not only to the creation, but the continued existence of the marital relation. In short the contract simply gave express approval to the right the wife had for a long period of time theretofore conferred on the husband, to use her property as an aid in enabling him to discharge his duty under the law governing the marital relation, in providing a home for and in supporting her and their children. There is therefore, in this agreement, no provision which requires the husband to do more than he was required by law to do. [Wendover v. Baker, 121 Mo. 1. c. 294 and cases.] This being true, despite the differences in the language of the liberal Married Women's Acts of the different States, which have given rise to variant constructions, it is generally conceded, even in States which have acts as broad or broader than those of this State, that a married woman, unless permitted by an express statute, cannot contract with her husband for services which are imposed by the marital relation. Many courts maintain that to uphold such contracts would be against public policy and also that they are without consideration. The lack of the latter, in the instant case, is sufficient to authorize the holding that this agreement, so far as it attempts to affect the legal rights of the wife or to confer any right of control of her property upon the husband, is a nullity. [Lee v. Savannah Guano Co., 99 Ga. 572, 59 Am. St. 243; Miller v. Miller, 78 Iowa, 177, 16 Am. St. 431; Grant v. Green, 41 Iowa, 88; Dempster Mill Mfg. Co. v. Bundy, 64 Kan. 444, 56 L. R. A. 739; Ayers v. Railroad, 52 Iowa, 478; McDonald v. Neilson, 2 Cow. (N. Y.) 139; Foxworthy v. Adams, 136 Ky. 403, 27 L. R. A. (N. S.), 308.]

The limit to which the courts have gone in construing the Married Women's Acts is that while they give a wife the power to contract with her husband respecting the acquisition and disposition of property they do not authorize her to contract with him in regard to the performance of services which the law requires him to perform in the absence of a contract. [Cobb v. Cowdery, 40 Vt. 25, 94 Am. Dec. 370; Robinson v. Jewett, 116 N. Y. 40; Conover v. Stillwell, 34 N. J. L. 54.]

When we consider the nature of the marital relation the reason for the rule above stated becomes evident. The parties thereto, upon the creation of the relation, assume under the law, obligations which require them to perform certain well defined duties. For the per-

formance of these neither has any right to exact any further consideration from the other. In Miller v. Miller, supra, in which there was an agreement between a husband and wife promising each other and their children that all past differences should be ignored and that she should keep her home and her children in reasonably good condition and that he would provide for the necessary expenses of the family and in addition pay her for her personal use $200 per year, the court held that this agreement could not be enforced against him, for the reason that the promises on the wife's part were nothing more than was demanded of her by the marital relation and for the additional reason that a judicial inquiry to determine whether such contract had been performed by her "would strike at the very foundation of domestic life and happiness." The court further held (which we do not deem necessary to hold here on account of the complete absence of consideration) that "public policy dictates that the door to such inquiries should be closed and that a contract between a husband and wife should be held legal which required such inquiries essential to its enforcement."

II. Other requirements necessary to render a contract valid are, that its terms be explicit, its purpose clear, and its duration definitely defined. This agreement limps lamely when subjected to these tests. By its terms it attempts to confer the management of the wife's land upon the husband. Incidentally, in this connection, it may be said (if the matter had properly been called to the trial court's attention), that the so-called contract does not conform to the requirements of the Statute of Frauds in describing the wife's land. [Meramec Port. Cement Co. v. Kreis, 261 Mo. 160; Ranck v. Wickwire, 255 Mo. l. c. 57 and cases.] This aside, however.

The management attempted to be conferred upon the husband is indefinite as to time, and is subject to the direction and control of the wife. The retention of control by the wife and the absence of terms indicative of the duration of the contract or of the husband's tenure, renders the instrument so indefinite as to authorize its termination at will by either party. [Latshaw v. Stoddard, 194 S. W. (Mo. App.) 727; Davis v. Pioneer Life Ins. Co., 172 S. W. (Mo. App.) 67.]

III. In addition, the agreement violates another requisite to a valid obligation in that it is not mutually binding upon the parties. Its unilateral character is disclosed in the fact that it attempts to bind the husband to maintain a home and support his family which, as we have shown, is a duty imposed by law to which the contract could give no binding force and is therefore in

944

this respect nugatory and lacking in enforceability. A contract which may be terminated at will by one of the parties without liability for damages is, for lack of mutuality, not binding. [Copper Miners v. Fox, 1 Eng. L. & Eq. 420; 6 Am. & Eng. Cyc. p. 730, par. 12.]

IV. An averment in the contract that requires consideration is that concerning improvements. The language employed in regard thereto renders the contract of the husband for this purpose unilateral. He agrees to use the income from the land for the support of the family and the improvement of the real estate. The amount or nature of the improvements he is to perform is not stated and in this indefinite and uncertain form no action can be maintained against him for a failure of either present or future performace. The contract therefore lacks mutuality in this respect and is not enforceable. [Wendover v. Baker, 121 Mo. 273.] It is elementary that to render a contract valid there must be a mutuality of engagement so that each party may have a right of action upon the promise of the other. In an action therefore by the wife against the husband, as at bar, for damages for failure to make improvements, no rule can be invoked by which the measure of such damages can be ascertained and the action would therefore fail. This follows because the contract imposes no binding obligation on the husband to make any particular amount or character of improvements. The contract being void for uncertainty is subject to cancellation by either party at will and no right of action can be maintained thereon, either by the husband for improvements made or by the wife for his failure to make them.

V. It may be admitted that an unilateral contract may be rendered mutual by the subsequent acts of the parties, but this rule only has application where the defect in the contract is due to a lack of mutuality. Where, as at bar, the contract is not only unilateral, but wholly lacking in consideration, indefinite in its terms and uncertain as to its duration, no subsequent act of the parties can impart validity to it. Its vital defect being a lack of consideration, which the act of the parties cannot supply, a correction of its other defects will not render it valid. [Underwood Typewriter Co. v. Realty Co., 220 Mo. 522.]

Nor can the rule as to the curative effect of part performance be applied here to piece out an unenforceable obligation. This contract, neither by its terms or by implication, purports to convey the land or in any respect to lessen or limit the title of the wife; it is nothing more than an attempt to confer upon the husband the right to use and occupy the land, free from any binding obligation on him, except "to use the rents, profits and income for the improvement of the

real estate and the support of the family." Void from its inception, for the reasons we have stated, it possesses none of the characteristics of a contract to which the doctrine of part performance can be applied. The interpretation which must be given to it therefore, from its subject-matter, lends no countenance to the contention that it can be classified as an oral contract to convey the land and upon its being thus construed that it may be held to avoid the limitations of the Statute of Frauds by part performance.

VI. Errors in procedure during the trial are called to our attention. It is contended that the trial court erred in the admission in evidence of the defendant's Exhibit Number Two, which had reference to a record entry of a trial court concerning  alimony and suit money in a divorce suit between the parties which had been determined adversely to the plaintiff and no decree entered therein. This exhibit was wholly irrelevant to any matter at issue in the case on trial. Ejectment was the matter at issue and the record admitted pertained solely to questions of alimony and suit money which were not only irrelevant but prejudicial.

It is further contended that the admission in evidence of defendant's Exhibit Number Three was error. This exhibit was a copy of the final judgment and mandate of the St. Louis Court of Appeals in the divorce suit above referred to. Under no tenable theory of the defendant's rights in this case or under the rules of evidence could this exhibit have been properly admitted. In what manner its admission could serve as a guide in construing the contract upon which the defendant relied to defeat the plaintiff's claim to possession of her land is past finding out. The exhibit being wholly irrelevant the conclusion is authorized, regardless of the theory of the trial court in admitting it, that the purpose of its offer in evidence by the defendant was to prejudice the jury against the plaintiff on account of the Court of Appeals having ruled adversely to her in the divorce suit. The fact that the plaintiff had referred to the divorce suit in her testimony could not render the admission of the judgment and mandate in the divorce case admissible in evidence.

To sustain the ruling of the trial court in the admission of these exhibits the defendant invokes the rule that one who introduces irrelevant evidence cannot assign error in the admission of evidence for the adverse party relating to the same matter. Under a proper state of facts the wisdom and propriety of this rule cannot be questioned. The plaintiff was interrogated as to what money she had theretofore received from the defendant and stated that a portion of the amount paid to her by him, under an order of court, was for alimony and the expenses of the suit, and not for rent,

of which she testified separately. This testimony was incidental and explanatory and was not improper in enabling the jury to segregate the amounts paid by the defendant to her for other purposes from that paid as rent which was one of the matters at issue. No prejudice could have resulted to the defendant on account of the witness's explanation of the nature of these payments. On the contrary, according to the defendant's theory, the more money he had paid to the plaintiff since their separation, whether for rent or for other reasons, the less she was entitled to the possession of the land. Regardless of the defendant's theory, which we have demonstrated is erroneous, the true rule under the facts is that where, as here, no prejudice has resulted to the defendant from the plaintiff's reference to the divorce case the introduction of the exhibits was unauthorized. We recall in this connection what was pithily said by the Supreme Court of Georgia (Stapleton v. Monroe, 11 Ga. 845), that "there can be no equation of errors," and our conclusion in regard to the same in Buck v. Buck, 267 Mo. l. c. 661, "that the admission of improper testimony on the one side does not authorize the admission of improper testimony in rebuttal on the other." [See, also, Setzler v. Met. St. Ry. Co., 227 Mo. l. c. 470.]

Other errors are assigned by the plaintiff which were evidently committed on account of the mistaken theory that the contract between these parties formed a basis for the determination of their rights and they will not occur again. We have shown that the contract is a nullity and that it should be eliminated from consideration in a subsequent trial of this case. The plaintiff's right to the possession of this land is, under all of the evidence, conclusive and we so hold. The case is therefore reversed and remanded with directions to the trial court to ascertain in a hearing for that purpose the amount of the damages to which she is entitled to recover from the defendant for the unlawful withholding of the land from her and for the monthly value of the rents and profits thereon from the rendition of this judgment until the possession of the property has been delivered to the plaintiff. It is so ordered.

The foregoing opinion of WALKER, C. J., heretofore delivered in Division Two, is adopted as the opinion of Court en Banc. *Atwood, J.,* concurs; *Ragland, Blair* and *Gantt, JJ.,* concur in the result; *Graves* and *White, JJ.,* dissent, *White, J.,* in a separate opinion.

WHITE, J. (dissenting).—I dissent from the conclusion reached by WALKER, J., in this case.

I.  I do not think the contract set out is without consideration as held in the opinion.  It purports to be a settlement of differences which existed before between the parties.  The opinion holds that those differences were only marital disagreements and failure to live together as husband and wife.  The Court of Appeals held that the Circuit Court of Scotland County in the previous case had exceeded its jurisdiction in appointing the husband as receiver of the wife's property; so the difficulties referred to were difficulties about property.

It is true that the husband was lawfully obliged to support his family, but he was not obliged to take care of his wife's property.  She had sole and exclusive control of it, and the management of the property was not one of his duties.  That management was a part of the consideration of the agreement.  Further, while he was obliged to support his family he was not obliged to devote what he earned from the property to that purpose.  He could support them in any way he saw fit and devote his earnings there to any purpose he pleased.  Nor was he obliged to make improvements on the property as one of his marital duties.

While the contract fails to describe the hundred acres of land, so as to bring it within the Statute of Frauds, possession in such cases is always sufficient part performance to take a contract of that kind out of the operation of the Statute of Frauds.  If the contract is somewhat vague in some of its terms, it is to be interpreted by the way the parties understood it and acted upon it.  There is no reason to declare it wholly void.

II.  But suppose that the contract is of no force or effect.  Take it out of the way entirely.  The parties were living there with their children on the wife's land.  Apparently she left the place, not because she was dissatisfied with her husband's management of it, but because she did not want to live with him.  She could not recover in ejectment in such case unless she could allege and prove that he withheld possession from her.  As I gather it, he did nothing of the kind; she had a right to possession of the property and that right was not denied.  If she was dissatisfied with his management and was under no obligation to him under the contract, her remedy would be to deprive him of that management and assume the management herself.  She could not just go away from home, voluntarily leave her husband and children, and then sue for possession and put him out.  He had a right to live there with his family.

For these reasons I dissent from the conclusion reached.