## In re PITTMAN.

(District Court, E. D. North Carolina. September 26, 1921.)

**1. Pledges ⏝11—Possession by pledgee essential to valid pledge.**

To constitute a valid pledge it is requisite that the pledgee have possession of the subject-matter of the pledge either actually or constructively.

**2. Bankruptcy ⏝161(2)—"Chattel mortgage" held invalid as preference; "pledge."**

When bankrupt, a merchant, borrowed money from claimant, it was agreed that claimant should have certain fixtures as security with the right to a chattel mortgage thereon at any time. The fixtures were not removed, but remained in the store, and were used as before. Some two months later, a short time before the bankrupt was insolvent and known to be so by claimant, the note for the loan was renewed and claimant took a mortgage on the fixtures and recorded it. *Held*, that the original transaction did not constitute a pledge, but merely an agreement to give a mortgage, and that the mortgage, when given, secured an antecedent debt, and was invalid as a preference as against the trustee.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Chattel Mortgage; Pledge.]

In Bankruptcy. In the matter of S. B. Pittman, bankrupt. On review of referee's order denying claim of D. F. Bridgers to priority as to certain store fixtures. Affirmed.

See, also, 275 Fed. 686.

Lyn Bond, of Tarboro, N. C., for trustee.
W. O. Howard, of Tarboro, N. C., for bankrupt.

CONNOR, District Judge. Heard upon petition for review and certificate of Marshall C. Staton, Esq., referee. The record discloses that D. F. Bridgers filed a proof of debt based upon note executed by the bankrupt, January 21, 1921, for $500, due on demand, with interest from date. The consideration upon which the note was executed was the loan of $500 made by Bridgers to Pittman on the date of the note. Bridgers claimed a priority in respect to certain articles of personal property consisting of store fixtures, etc. The trustee filed objection to the priority and, after hearing the evidence, the referee found the following facts:

S. B. Pittman was on, and for some time prior to, January 21, 1921, engaged in the mercantile business in Tarboro. D. F. Bridgers loaned him $500, taking note due on demand. When Pittman applied to Bridgers for the loan, he said:

"'I would like to borrow $500 from you. I will give you these items here.' Went around and put my hand on them all and said: 'They are in your possession until you have the mortgage drawn up. * * * These things are yours.' Went around and mentioned all the things. Told him he could have the mortgage drawn up at any time he wanted to. I was to pay the money on demand until he had the paper recorded and then on the 1st of November. I wanted the man to have security for his money and I wanted possession of the things at the time I got the money."

Bridgers testified:

"When I loaned him the money I asked him how long he wanted it. He said, 'December or January,' but he said, 'I will write it on demand.' That's the way he gave it to me. He knew he could keep it as long as he wanted it, but he wrote the duebill on demand. He told me to go and have the mortgage drawn and fixed up, and I carelessly let it go on and on until one day I got to thinking about it and went and had it done."

To the question, "What agreement did you and Sol have about it at the time you took the note, January 21st?" he replied:

"He told me he would give me a mortgage on those things, and I said, 'They are all paid for, are they?' And I also said, I wanted something stationary and named these five articles, and I said I could have them until they were paid for. He showed them to me. He told me that it was my stuff and I let him keep it as my property, as my agent."

On March 16, 1921, the bankrupt executed to Bridgers a chattel mortgage on the same articles referred to in the testimony relating to the transaction of January 21, 1921, executing a new note payable November 1, 1921. The mortgage was recorded on the ―――― day of March, 1921. Pittman was adjudged a bankrupt April 12, 1921.

Counsel for Bridgers contend that, at the date of the execution of the note, Pittman pledged the store fixtures to him as security for the loan; that the pledge was for a present consideration; and that Pittman was not, at that time, insolvent and, if found to be so, Bridgers had no knowledge of or reasonable ground to believe him insolvent.

The trustee contends that the transaction did not constitute a pledge, but was an executory promise by Pittman to execute a mortgage when Bridgers should have it prepared.

If what was said and done by Pittman and Bridgers on January 21st constituted a verbal or parol mortgage, as was held by the court in McCoy v. Lassiter, 95 N. C. 88, it was valid as between the parties, but was not so against creditors who secured a lien for want of registration. The trustee is in the position of a lien creditor. Section 47(2). Counsel for Bridgers in his brief contends that "the original transaction really constituted a pledge."

[1] There is a well-settled distinction between a pledge and a chattel mortgage. In the first, the title to the property remains in the pledgor, the possession is given to the pledgee. A "pledge" is defined to be:

"A bailment of goods by his debtor to his creditor to be kept by him until his debt is discharged or a delivery to another of goods or chattels to be security to him for money borrowed of him by the bailor."

Whereas, in the case of a mortgage the title to the property passes to the mortgagee with the right to redeem upon payment of the debt, the mortgagor remaining in possession. 22 Am. & Eng. Enc. 844.

"Possession is of the essence of a pledge; and, without it, no privilege can exist as against third persons." Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779.

A promise to execute a mortgage on personal property to secure a debt, then contracted or in consideration of the present loan of money, or other valuable consideration, may, as between the parties, be enforced, in a court of equity, but does not create a valid lien as against purchasers for value and creditors.

While, to constitute a pledge, it is requisite that the pledgee have possession of the subject-matter of the pledge, "the possession need not be actual; it may be constructive; as where the key of a warehouse containing the goods pledged is delivered, or a bill of lading is assigned. In such case, the act done will be considered as a token, standing for actual delivery of the goods. It puts the property under the power and control of the creditor. In some cases, such constructive delivery cannot be effected without doing what amounts to a transfer of the property also. The assignment of a bill of lading is of that kind. * * * In such a case, there is a union of two distinct forms of security: That of mortgage and that of pledge; mortgage by virtue of the title, and pledge by virtue of the possession." Casey v. Cavaroc, supra. The line of distinction between acts which will constitute a delivery of possession of goods, essential to constitute a valid pledge, is not always clear as is illustrated in the review of the decided cases and authoritative text-books made by Judge Bradley in the case cited.

It is said:

" 'Preference is accorded to a pledgee on the thing pledged, because he has it in his own hands. This possession ought to be certain and not equivocal. If it is ambiguous, if the things pledged have been so placed as to deceive the other creditors, and to lead them to believe that the debtor always continued the possessor, the pledge would be endangered. * * * Bad faith, it is true, would defeat the pledge though the creditor had possession. But want

of possession is equally fatal, though the parties may have acted in good faith. Both are necessary to constitute a good pledge so as to raise a privilege against third persons. The requirement of possession is an inexorable rule of law, adopted to prevent fraud and deception; for, if the debtor remains in possession, the law presumes that those who deal with him do so on the faith of his being the unqualified owner of the goods." Casey v. Cavaroc, supra.

In Philadelphia Warehouse Co. v. Winchester (C. C.) 156 Fed. 601, Judge Bradford laid down a rule which is easily complied with by the parties and protects creditors of the pledgor. He said:

"Due and reasonable care should be observed by the pledgee to negative the existence of ostensible ownership in the pledgor, and to this end such means should be resorted to as fairly to inform or put third persons on inquiry."

In that case the pledgee, in whose possession the property was left, placed cards upon it in conspicuous positions, plainly indicating that the pledgee claimed or was interested in it.

In Bush v. Export Storage Co. (C. C.) 136 Fed. 918, will be found an interesting discussion and review of decided cases, in regard to the requisites essential to constitute a pledge of personal property which will be valid as against the trustee in bankruptcy of the pledgor.

In Am. Can Co. v. Erie Preserving Co. (C. C.) 171 Fed. 540, Hazel, Judge, said:

"It is quite well settled that the requirements of the general law oblige the pledgee to give reasonable notice to third parties that the ostensible ownership of the property pledged is in him; and, moreover, to obey its legal requirements he must resort to such reasonable means as the circumstances demand in order to give to third parties such information." Security Warehousing Co. v. Hand, 206 U. S. 415, 27 Sup. Ct. 720, 51 L. Ed. 1117, 11 Ann. Cas. 789.

In re Peacock, 178 Fed. 851 (C. C. East. Dist. N. C.), the cotton claimed by the pledgee was shipped to and in the actual possession of the pledgee.

[2] Here the articles claimed to have been pledged were never, at any time, in the possession or under the control of Bridgers, nor was there any separation from the other property in the store, nor any custodian appointed to hold possession for the pledgee, nor any mark, card, or other notice placed upon the articles to give notice to creditors of the claim of the pledgee. In the cases which I have examined, or to which reference is made, in which the pledge was sustained as against the trustee in bankruptcy, one or more of these indicia of a bailment or change of possession are found to have been resorted to.

I am unable to find in the evidence any sufficient delivery of possession either actual or constructive, to constitute a valid pledge of the property claimed by Bridgers.

It is not clear whether the minds of Pittman and Bridgers came to an agreement as to what they intended to do in respect to the form of the security. Their testimony rather tends to show that Pittman agreed to give Bridgers a mortgage on the articles, whenever the latter had it written. It was a promise to execute a mortgage rather than a present pledge of the goods. If this view be adopted, it is clear that no lien attached to the goods as against creditors until the mortgage was

executed March 15, 1921, one month before Pittman was adjudged a bankrupt.

In Re Klingaman, 101 Fed. 691, Judge Shiras, dealing with a state of facts presenting a question somewhat analogous, said:

"In my judgment, it was the purpose of this enactment to declare generally that, with respect to acts of bankruptcy consisting of making transfers of property when insolvent with intent to give a preference, the act is to be held to have been committed when the transfer is made effectual as against other creditors, by recording or registering the instrument of transfer, or by the beneficiary taking actual and open possession of the property, or by otherwise giving actual notice of the transfer to creditors."

In Lathrop Bank v. Holland, 205 Fed. 143, 123 C. C. A. 375, the bank advanced money to a customer with which to buy horses, under an oral agreement not to dispose of the horses purchased without the bank's consent and to give a chattel mortgage on the horses at the end of the venture. No mortgage was given until the day before the petition in bankruptcy was filed. The bank then knew that the customer was insolvent. In a contest between the bank and the trustee, Hook, Circuit Judge, after stating the terms of the dealing, said:

"No present lien was reserved by the bank; it did not take title in itself, or possession, either actual or constructive. They remained under the control of the bankrupt, with full apparent power of disposition. They were bought in the name of the bankrupt, not in that of the bank, and continued his property with no visible evidence of limitation by physical custody or in the public records. If the bank had taken mortgages as the purchases were made, but had refrained from recording them, it could not have prevailed against the trustee in bankruptcy. The oral agreement for a mortgage can give no greater right. The equity claimed by the bank is not different from that of any ordinary creditor who relies on his debtor's promise to do or not to do certain things in the future and refrains from adopting one of the various methods of protecting it. A purpose of the bankruptcy acts and of state recording statutes is to discourage secret equities."

The mortgage was executed to secure an existing debt. The note of January 21, 1921, due on demand, was canceled, and a new note due November 1, 1921, executed.

This being done within four months of the adjudication of Pittman, it was clearly a preference, and if Bridgers knew or had reasonable cause to believe that Pittman was, at the date of the mortgage, insolvent, it is voidable as against the trustee. In that respect, I concur with the conclusion of the referee. There is ample evidence to sustain his finding of the fact.

Without doubting the good faith of Pittman or Bridgers in the transaction and regretting that the latter must lose his debt, or a large proportion of it, I am constrained to hold that the referee was, in all respects, correct in his judgment.