**UNITED STATES v. MAHONING COAL R. R. CO. et al. (three cases).**

**ROUTZAHN, Collector, etc., v. SAME.**

**Nos. 5765–5768.**

Circuit Court of Appeals, Sixth Circuit.

July 8, 1931.

Wright Matthews, of Washington, D. C. (W. J. Mahon and John B. Osmun, both of Cleveland, Ohio, and C. M. Charest, of Washington, D. C., on the brief), for appellants.

C. C. Handy and William Mann, both of New York City, for respondents.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

DENISON, Circuit Judge.

These four cases involve the liability of the Mahoning Company for income taxes during the years 1917, 1918, 1919, and 1920, the most substantial question being whether the Mahoning Company and the New York Central Railroad, or its subsidiary, the Lake Shore, were affiliated corporations within the meaning of section 240 (b) of the Revenue Act of 1918 (40 Stat. 1082) and section 1331 of the Act of 1921 (26 USCA § 1067).

In case 5765, it appears that the Mahoning Company, having paid this tax for the calendar year 1918, thereafter and on March 7, 1924, filed its claim for refund. This claim was disallowed by the Commissioner, at a date which is in controversy. The suit to recover the claimed refund was brought Febru-

ary 7, 1927, more than five years after payment of the tax. The five-year statute of limitations allowed two years after a claim for refund was disallowed. (Section 1113 [a] of the Revenue Act of 1926 [26 USCA § 156]).

■ We think the statute had not run. The petition shows that on February 2, 1927, the local collector notified the plaintiffs "that said claim for refund had been disallowed on January 27, 1925." A demurrer presenting the defense of limitation was overruled, upon the expressed understanding by the district judge that notice to the taxpayer of the disallowance was necessary to start the two-year period running. We think the demurrer was properly overruled, although the reason stated has since been held to be insufficient. U. S. v. Michel, 282 U. S. 656, 51 S. Ct. 284, 75 L. Ed. 598. It is true that this action was not brought within five years after the payment, and hence the burden was upon the petitioner to allege that it was brought within two years after the disallowance of the claim for refund. The petitioner evidently intended to allege a denial, effective as of February 2, 1927. If it had alleged a disallowance on January 27, 1925, that would have been fatal; but that was not the allegation, it was only that the collector said that the claim had been disallowed on that date by the Commissioner. The fact as to the date of the disallowance was not expressly stated; and upon demurrer the petition was therefore good by virtue of its intent to allege disallowance as of February 2, 1927.

■ Thereupon answer was filed, which admitted "that on January 27, 1925, the Commissioner of Internal Revenue disallowed such claim for refund," and denied everything else. The petition not having made the allegation which the answer purported to admit, the formal reply therefore made an issue as to the date of the disallowance. Upon the proofs, the alleged letter of February 2, 1927, from the collector did not appear. The only proof as to the rejection is found in a letter of February 7, 1925, from the Commissioner, which makes reference to the claim for refund and the reasons which make it not proper to be allowed and concludes, "These claims will therefore be rejected. The rejection of these claims will officially appear on the next schedule to be approved by the Commissioner." It therefore sufficiently appears that the disallowance was not earlier than February 7, 1925, and so the suit was in time.

We think it unnecessary to recite all the facts as to the supposed affiliation. They are fully covered by the stipulation of facts. We think it clear that under our decision in the Painesville Case (United States v. Cleveland, P. & E. R. Co.), 42 F.(2d) 413, there is not that degree of ownership or control by one corporation of substantially all the stock of the other, or community of ownership by the same interest of substantially all the stock of both corporations, necessary to give the statutory affiliated character. Indeed, the decision of the district court that they were affiliated was based upon the previous decision of the same court in the Painesville Case to the same effect; and it is now conceded that our reversal of the Painesville Case necessitates also a reversal in these cases, excepting for the additional feature present here and not there. During all the period in question, the relations between the two companies were governed by a long-term lease from the Mahoning Company to the Lake Shore Company, and the Mahoning Company was not operating the railroad or engaged in any business excepting receiving the agreed rentals, paying some corporate maintenance charges, and disbursing the remainder as dividends. The lease is urged as distinguishing from the Painesville Case, and said to disclose such a complete control by one company as to constitute affiliation. On the contrary, we think this makes the case stronger against the affiliation theory. That rests upon the idea that by unity of stock ownership or control the profits could be shifted back and forth between the two corporations in such a way as to affect the total amount of taxes, and hence that, in those cases, affiliation should either be permitted (as in some years) or required (as in some years). Here, there could be no such shifting of profits, and the fundamental reason for affiliation does not exist. The division of operating profits between the two companies is fixed by contract; and we see no reason why the share apportioned to each by the contract should not constitute the separately taxable income of each.

■ The remaining question arises thus: The lease from the Mahoning to the Lake Shore provided that the lessee should pay the lessor's taxes. In supposed pursuance of this contract, the Lake Shore, and later the New York Central, paid the federal income taxes which were assessed against the Mahoning for all the years, to and including the first quarter of 1921. Upon the theory that the amount so paid constituted an additional tax-

able income to the Mahoning, the Commissioner levied an additional tax against it. The question is whether the case is controlled, in this respect, by Old Colony Trust Co. v. Commissioner, 279 U. S. 716, 49 S. Ct. 499, 73 L. Ed. 918, and U. S. v. Boston & Maine Railroad, 279 U. S. 732, 49 S. Ct. 505, 73 L. Ed. 929. The difference is that in those cases, the income taxes were paid for the benefit of the lessor, pursuant to valid contract obligations; but in this case it was decided in February, 1926, by the Court of Appeals of New York, that this lease did not require such taxes to be paid by the lessee. Brainard v. N. Y. C. R. Co., 242 N. Y. 125, 151 N. E. 152, 45 A. L. R. 751. Should this (legally) voluntary payment to the Mahoning therefore be considered in the nature of a gift and not taxable, or rather be treated as income in the ordinary course of business, taxable as such for the current year, leaving the taxpayer to be recouped, if at all, only by claiming a loss in a later year, when it may be finally decided by litigation, or otherwise, that the receipt of the payment created a duty to repay, and where that duty is met by actual repayment? If there had been at the time such a conscious and admitted duty to repay, or perhaps if the duty to repay were so clear that it could be carried back by relation, there would be a different question; but here that duty was, to say the least, not clear; nor has it even yet been established in litigation between the parties. A payment which, though legally voluntary, yet has been made in the regular course of business and pursuant to contract obligations as understood at the time by both parties, is not necessarily and in all cases repayable when it is later ascertained both parties are mistaken, and that the legal obligation to pay did not exist. Nor can we think that such a payment is so far in the nature of a gift as not to be taxable income. Paid and received under claim of right, it becomes income for that period, and we think should be so treated; and subsequent developments affecting its character must be met, as of the time when they occur. This case falls within the principle of Burnet v. Sanford & Brooks Co., 282 U. S. 359, 51 S. Ct. 150, 75 L. Ed. 383, and as developed and applied by us in Board v. Commissioner, 51 F.(2d) 73, decided June 11, and Ford v. Commissioner, 51 F.(2d) 206, this day decided.

The judgments in these cases should be reversed, and the cases remanded for further proceedings in accordance with this opinion. If counsel desire to file a petition for rehearing, we will hold it until the decision of the Supreme Court in a pending certiorari,[1] which involves the rightfulness of our conclusion in the Painesville Case, and which decision might require another result in three of these cases.