## TILLES v. COMMISSIONER OF INTERNAL REVENUE.

### No. 11490.

Circuit Court of Appeals, Eighth Circuit.

July 24, 1940.

Rehearing Denied Sept. 4, 1940.

George T. Priest, of St. Louis, Mo. (Robert E. Moloney and Boyle & Priest, all of St. Louis, Mo., on the brief), for petitioner.

Robert N. Anderson, Sp. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Sp. Asst. to Atty. Gen., on the brief), for respondent.

Before GARDNER and WOODROUGH, Circuit Judges, and MOORE, District Judge.

MOORE, District Judge.

This case is before us on petition for review of a decision of the United States Board of Tax Appeals determining a deficiency in income taxes against the petitioner for the year 1931.

Prior to the year 1908 the petitioner had been married to Corinne L. Tilles, and at the April, 1908, Term of the Circuit Court of the City of St. Louis, Missouri, Mrs. Tilles sued petitioner for divorce, but later dismissed her suit, resumed marital relations with petitioner and accompanied him on a trip to Europe.

Petitioner thereafter filed suit for divorce against Corinne L. Tilles in the Circuit Court of the City of St. Louis, Missouri, at the June, 1909, Term of the court, and on the 10th day of June, 1909, petitioner was granted an absolute divorce.

Prior to the entry of said decree of divorce petitioner entered into an agreement with said Corinne L. Tilles, the terms and conditions of said agreement being reflected in the following letter from Mr. Tilles to his wife:

"St. Louis, Mo., May 12, 1909.
"Mrs. Corinne Tilles,

"In view of the fact that I have instituted a suit for divorce against you, and in order to avoid any adjudication by

the Court of alimony in said case, in the event the Court should hold on the trial that I am entitled to such divorce, and in order to discharge my duty in the matter of providing you with means of support and proper maintenance: I hereby state that if the Court shall decree upon the hearing and trial of said cause, that I am entitled to such divorce, then I will in lieu and stead of permitting any judgment or decree for alimony against me, pay and secure to you the sum of Four Hundred Dollars ($400.00) per month, during your natural life, and in the event that your mother should survive you, then to her the sum of One Hundred Dollars ($100.00) per month, during her natural life. That to secure these payments, I will pledge stock in The New Memphis Jockey Club of par value of $25,000 and also in the Douglas Park Jockey Club, of the par value of $50,000; and also stock in the Detroit Racing Association, of the par value of $40,000; and also stock in the Latonia Agricultural Association, of the par value of $12,500; upon the express condition, however, that I shall have the option at any time during my life, of paying $100,000 in cash to you, and being thereby released from any and all obligations and undertakings herein and hereby mentioned and set forth, or in case of my failure to exercise such option, and in case of my death leaving you surviving, then my executor shall pay to you the sum of $100,000.00 and shall thereby be released, and my estate and my heirs and representatives be released from any and all covenants herein proposed, undertaken or assumed.

"I hereby expressly reserve the right, at any time during the existence of this agreement herein proposed, to sell any or all of the stock herein described or which may be pledged to secure such agreement, upon condition, that I shall substitute for such stocks; and pledge in the same manner, other stock, bonds or securities of equivalent value to that to be withdrawn.

"I make this proposition and agreement solely in consideration of my marital duty, and to adjust any matter of alimony, and prevent the consideration of said matter of alimony by the Court in which my suit is pending, in case it should hold I am entitled to a decree for divorce.

"This 12th day of May, 1909.
                    "(Signed) C. A. Tilles.
"Accepted:
    "(Signed) Mrs. C. A. Tilles."

The day following the divorce decree the securities mentioned in the pre-divorce agreement were deposited with the Mississippi Valley Trust Company, of St. Louis, with a letter of instruction and a copy of the agreement. The letter of instruction to the Mississippi Valley Trust Company was as follows:

"Mississippi Valley Trust Co.,
St. Louis, Mo.
"Gentlemen:

"I herewith deliver to you a copy of a contract made by me and which, as you will see, I have proposed to secure by the pledge of certain collaterals therein mentioned, and which collaterals I now deliver to you to hold for the purposes of securing the performance by me of the terms and provisions of said contract. The stock herein put in your custody for the aforesaid purposes consists of,—

"Stock in the New Memphis Jockey Club of the par value of Twenty-five Thousand Dollars ($25,000.);

"Stock in the Douglas Park Jockey Club of the par value of Fifty Thousand Dollars ($50,000.);

"Stock in the Detroit Racing Association of the par value of Forty Thousand Dollars ($40,000.), and

"Stock in the Latonia Agricultural Association of the par value of Twelve Thousand Five Hundred Dollars, which is to be retained in your custody for the purposes above stated, and subject to my right to withdraw and substitute other stock, bonds or securities therefor, as provided in said contract, and also subject to the further right of a withdrawal of any and all of said pledges upon any written direction to you assented to in writing by Mrs. Corinne L. Tilles.

"Dated this 11th day of June, 1909.
        "Yours Respectfully,
                "(Signed) C. A. Tilles."

Within one week after the decree of divorce was granted petitioner, Mrs. Corinne L. Tilles remarried.

The record shows that Mr. Tilles withdrew the original securities from time to time, substituting others of equal value, and in several instances replacing depreciated securities with securities of greater value.

Petitioner has continued to pay his former wife the $4,800 annually, as provided in their agreement.

Upon the receipt of the $4,800 in 1931 the petitioner's former wife included the sum as taxable income in her federal income tax returns for that year and paid the tax thereon.

Until the year 1925 the petitioner, in his annual tax returns, deducted such payments as representing the payment of interest on a contractual obligation. The respondent, however, ruled in 1928, with respect to the years 1922 to 1925, that the income from the securities held by the Mississippi Valley Trust Company under the agreement of May 12, 1909, was neither includable in petitioner's gross income, nor deductible therefrom for tax purposes. But in determining the deficiency for the year 1931 involved in this proceeding, the respondent reversed the prior ruling and included the $4,800 made in that year in petitioner's taxable income. The Board of Tax Appeals sustained this determination, and thereupon petitioner filed his petition for review.

Petitioner contends that the payments to his wife, made by him, constituted no part of his income, and therefore he was not chargeable with them as income; or, else they were payments of deductible interest, at the rate of 4.8 per cent per annum, on a debt, or contractual obligation, for a valuable consideration and not in discharge of a marital obligation created in favor of petitioner's wife and against the petitioner, in the sum of $100,000, which principal petitioner bound his estate to pay absolutely upon his death, or optionally by petitioner before his death.

If either of petitioner's alternative contentions are correct, then the item of $4,800 would not constitute taxable income to the petitioner.

Petitioner testified that:

"Mrs. Tilles brought suit for divorce in the spring of 1908, without any notice or notifying me at all she filed suit in 1908, and at that time she owned some stocks and bonds and securities that were in my possession. I was going to allow her to secure the divorce. I was going abroad, and wouldn't contest it. I made arrangements at that time, in 1908, with her attorney, that I would give her the stipulated price, amounting to $4800.00 a year, and she would turn over the securities to me that she had. With that understanding I went to Europe. Before I sailed for Europe she joined me in my hotel, and she said: 'I am going to Europe with you. I have dismissed my suit'. That was the first I knew that she had dismissed the suit. We went to Europe together but it wasn't satisfactory, and when we returned to St. Louis later and she wanted to get a divorce she was told that she had no grounds, because she had condoned whatever ground she may have had. So when she couldn't get the divorce, I decided to get it. I drew up another agreement, which I copied from the agreement that was originally entered into by her attorney in 1908. She had sued me for divorce in lieu of alimony. I put in the words, 'I am about to sue you for divorce in lieu of alimony, and I will do so and so', which I realize was a mistake. There wasn't any alimony in it at all. There couldn't be any alimony."

"Agreement of May 12, 1909, Exhibit 'B' to the stipulation of facts filed, is the agreement I referred to that I wrote up. I copied it from the 1908 agreement. I did not consult any lawyer in drawing it up" * * * "And I subsequently obtained a divorce. I deposited the securities mentioned in this agreement of May 12, 1909, with the Mississippi Valley Trust Company. I changed them from time to time. Some of them had depreciated in value very much, and I substituted others in place of them. * * * I paid her $4800.00 every year since 1909. * * * After I obtained a divorce from Mrs. Tilles, she remarried within a week. * * *"

The testimony of the former Mrs. Tilles was as follows:

"That in the year 1908, at the City of St. Louis, Missouri, shortly after she had filed suit for divorce against the said C. A. Tilles, she entered into a written contract with the said C. A. Tilles in substantially the same form as the agreement now in existence, between them, except that said contract was different in that it contemplated my obtaining a divorce from Mr. Tilles. My executed copy of said contract of 1908 has either been misplaced or destroyed, as the same is not now in my possession. Prior to the making of said contract I owned absolutely as my own property some securities which Mr. Tilles had previously during our married life given me from time to time, but I have not at this time a list of such securities, nor do I now recollect what they were. I delivered such securities from time to time to Mr. Tilles for safekeep-

ing in his safe deposit box. After I filed my suit for divorce in 1908, Mr. Tilles tendered me delivery of my said securities, and also agreed to give me additional securities out of his own property to make the total par value of the securities owned by me of $100,000.00. I declined to accept this arrangement, and having full confidence in Mr. Tilles' judgment and ability as a business man, I requested him to retain possession of the securities and pay me the interest accruing thereon, fearing that I might lose the securities by bad investment or otherwise. I expressed a preference to Mr. Tilles, in lieu of paying me the interest accruing on these securities, to guarantee me a monthly income of $400 per month. This he agreed to do and also agreed to deposit other securities with the Mississippi Valley Trust Company, with the privilege to change such securities from time to time, such deposit to be made to insure the performance of the obligation to me as expressed in said agreement.

"I thereafter voluntarily dismissed my suit for divorce and accompanied Mr. Tilles on a trip to Europe. The filing of my suit for divorce had the effect of estranging us to each other and I told Mr. Tilles that I had concluded that I had better refile my suit for divorce on my return to the United States. On my return to the United States I consulted with my attorney, and he advised me that on account of the fact that I had voluntarily dismissed my original suit and re-established the marital relations with Mr. Tilles, even if the grounds for divorce mentioned in my original suit were well founded, I had condoned the alleged offenses and thereafter could not file suit on the same grounds. I then advised Mr. Tilles of this situation and on account of the humiliation caused him by the filing of my suit and the publicity incident thereto, he decided to file suit for divorce against me. He filed this suit in 1909 and thereafter obtained a divorce.

"After filing his suit Mr. Tilles told me that he would make the same arrangement with reference to my securities and the payment to me of a stipulated sum in lieu of the interest thereon, as had been previously provided for in the original agreement entered into between us in 1908. Accordingly, we entered into the agreement now in existence which was dated June 11, 1909. Prior to 1908, the securities which I delivered to Mr. Tilles in 1908 had always been my property absolutely, Mr. Tilles having no right, title or interest therein. The securities were merely in Mr. Tilles possession as custodian for safekeeping. These securities were always returnable to me on my demand, and Mr. Tilles offered to return them to me, as aforesaid, after I filed my suit for divorce in 1908. The securities which I so delivered to Mr. Tilles in 1908 remained in Mr. Tilles' possession under the 1908 agreement during the time we were in Europe, and on my return to the United States he filed suit for divorce as aforesaid and made the substitute agreement which is the agreement now in force between us as aforesaid."

Neither from the stipulation of facts filed nor from the testimony of Mr. Tilles or his former wife does it appear what was the value of the stocks, bonds and securities owned by Mrs. Tilles at the time of the pre-divorce agreement, and which were turned over to Mr. Tilles.

Petitioner relies upon Fitch v. Commissioner of Internal Revenue, 8 Cir., 103 F.2d 702, as authority for sustaining the deductibility of the payment. The Fitch case, however, has recently been reversed. Helvering v. Fitch, 309 U.S. 149, 60 S.Ct. 427, 428, 84 L.Ed. ——. In that case petitioner claimed that an amount distributed under a so-called alimony trust to respondent's divorced wife should have been included in respondent's taxable income. We quote from the opinion of Mr. Justice Douglas in that case:

"The so-called alimony trust in question was created a few years before the divorce, while respondent and his wife were separated, and in settlement of a suit brought by her for separate maintenance. Certain premises (a hair tonic factory and a long term lease thereon) were transferred to a trustee to hold title, collect rents and after deduction of expenses to pay the wife $600 a month during her life and the balance to respondent for his life. On the death of either respondent or his wife the deceased's share of the income was to be paid to their children. The trust was to continue at least fifteen years. On the death of both respondent and his wife the principal was to be paid over to their children. The trust was irrevocable. And while respondent covenanted to pay off certain encumbrances on the trust property, he

did not underwrite in whole or in part the $600 monthly payments to his wife.

"In 1925 she filed suit for a divorce in an Iowa court. A property settlement was agreed upon which included the trust agreement and, in addition, provided for a transfer to her by respondent of certain shares of stock and cash. The divorce decree confirmed the property and alimony settlement.

"The general rule is clear. 'Amounts paid to a divorced wife under a decree for alimony are not regarded as income of the wife but as paid in discharge of the general obligation to support, which is made specific by the decree.' Douglas v. Willcuts, supra, 296 U.S. [1] at page 8, 56 S. Ct. [59] at page 62, 80 L.Ed. 3, 101 A.L. R. 391.

The case of Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 60, 80 L.Ed. 3, 101 A.L.R. 391, referred to in the opinion in the case of Helvering v. Fitch, supra, is relied upon by the respondent as the controlling authority for the instant case. In that case petitioner, Edward B. Douglas, on September 12, 1923, entered into an agreement with his wife and the Minneapolis Trust Company, by which he transferred securities in trust for his wife's benefit. Out of the income of the trust estate the Trustee was to pay Mrs. Douglas annually the sum of $15,000, up to November 6, 1927, and thereafter $21,000. Deficiencies were to be made up in a prescribed manner. Excess income (in case the principal was not impaired) was to be paid to petitioner. On the death of his wife he was to receive the property free of the trust. Petitioner reserved the right to designate securities for investment, subject, however, to the approval of the trustee acting in that respect on behalf of Mrs. Douglas. The parties stipulated that the provisions for Mrs. Douglas were "in lieu of, and in full settlement of alimony, and of any and all dower rights or statutory interests in the estate" of her husband, and "in lieu of any and all claims for separate maintenance and allowance for her support." Three days later, Mrs. Douglas obtained a decree of absolute divorce in a district court of the State of Minnesota. The decree provided: "It is further adjudged and decreed that the defendant provide and create the trust fund as set out in that certain agreement between said parties and the Minneapolis Trust Company as trustee now on file

with said trustee, and that the plaintiff have the provision therein made in lieu of all other alimony or interest in the property or estate of the defendant and that neither party have any costs or disbursements herein."

Mr. Chief Justice Hughes, in delivering the opinion of the Court, said:

"Petitioner's contention that the district court did not award alimony is not supported by the terms of the decree. It described the provision as made 'in lieu of all other alimony or interest in the property or estate of the defendant.' However designated, it was a provision for annual payments to serve the purpose of alimony, that is, to assure to the wife suitable support. The fact that the provision was to be in lieu of any other interest in the husband's property did not affect the essential quality of these payments. Upon the pre-existing duty of the husband the decree placed a particular and adequate sanction, and imposed upon petitioner the obligation to devote the income in question, through the medium of the trust, to the use of his divorced wife.

"No question is raised as to the constitutional power of the Congress to attribute to petitioner the income thus segregated and paid in discharge of his obligation, and that authority could not be challenged successfully. Burnet v. Wells, 289 U.S. 670, 677, 682, 684, 53 S.Ct. 761, 77 L.Ed. 1439. The question is one of statutory construction. We think that the definitions of gross income (Revenue Act 1926, § 213; Revenue Act 1928, § 22 [26 U.S.C.A. Int.Rev.Acts, pp. 145, 345]) are broad enough to cover income of that description. They are to be considered in the light of the evident intent of the Congress 'to use its power to the full extent.' Irwin v. Gavit, 268 U.S. 161, 45 S.Ct. 475, 476, 69 L.Ed. 897; Helvering v. Stockholms Bank, 293 U.S. 84, 89, 55 S.Ct. 50, 79 L.Ed. 211. We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was discharged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor. Old Colony Trust Co. v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918; United States v. Boston & Maine Railroad, 279 U.S. 732, 49 S.Ct. 505, 73 L.Ed.

929. See, also, United States v. Mahoning Coal R. Co. [6 Cir.] 51 F.(2d) 208. The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered. Burnet v. Wells, supra. In the present case, the net income of the trust fund, which was paid to the wife under the decree, stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly.

"We do not regard the provisions of the statutes as to the taxation of trusts, fiduciaries and beneficiaries (Revenue Act 1926, §§ 2, 219; Revenue Act 1928, §§ 161, 162) as intended to apply to cases where the income of the trust would otherwise remain, by virtue of the nature and purpose of the trust, attributable to the creator of the trust and accordingly taxable to him. These provisions have appropriate reference to cases where the income of the trust is no longer to be regarded as that of the settlor, and we find no warrant for a construction which would preclude the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it.

"The decision in Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 222, 78 L.Ed. 365, is not opposed. There the trust was testamentary and the only question was with respect to the liability for the tax as between the trustee and the beneficiary. The Court observed that 'the evident general purpose of the statute was to tax in some way the whole income of all trust estates.' The decision has no application to a case where the income is still taxable to the grantor. Nor are the provisions of the statutes (Revenue Act 1926, § 219 (h); Revenue Act 1928, § 167) defining instances in which the grantor remains taxable, as in case of certain reservations for his benefit or provisions for the payment of premiums upon policies of insurance on his life, to be regarded as excluding instances not specified, where in contemplation of law the income remains in substance that of the grantor. No such exclusion is expressed and we see no ground for implying it."

In the instant case we are of the opinion that both the documentary and the oral testimony show that the petitioner did not create an irrevocable trust, or any trust at all in favor of his wife, but that he merely made a pledge of the securities in question to secure his promises under the pre-divorce agreement of May 12, 1909.

In consideration of his wife transferring to him the securities owned by her and, in his own language, "in consideration of my marital duty, and to adjust any matter of alimony, and prevent the consideration of any matter of alimony by the Court in which my suit is pending, in case it should hold I am entitled to a decree of divorce" the petitioner agreed to "pay and secure" his wife $400 per month during her natural life.

To secure these payments petitioner agreed to pledge stock. His letter of May 12, 1909, to his wife, which sets out the terms of their agreement, expressly states "that to secure these payments I will pledge stock * * *".

Petitioner's letter of instruction to the Mississippi Valley Trust Company of St. Louis, in which he transmitted to them a copy of the agreement, likewise referred to a "pledge of certain collaterals * * * for the purpose of securing the performance by me of the terms and provisions of said contract".

The unambiguous terms of the agreement of May 12, 1909, and the petitioner's letter of instruction to the Mississippi Valley Trust Company of St. Louis can only be construed as establishing a mere pledge of the securities in question to secure the performance of his promise to pay his wife $400 per month as distinguished from an assignment in trust.

The testimony of petitioner's own witness, his former wife, shows that she rejected petitioner's suggestion of a lump sum settlement. She testified, "After I filed my suit for divorce in 1908, Mr. Tilles tendered me delivery of my said securities, and also agreed to give me additional securities out of his own property to make the total par value of the securities owned by me of $100,000.00. I declined to accept this arrangement, and having full confidence in Mr. Tilles' judgment and ability as a business man, I requested him to retain possession of the securities and pay me the interest accruing thereon, fearing that I might lose the securities by bad investment or otherwise. I expressed a preference to Mr. Tilles, in lieu of paying me the interest accruing on these securities, to guarantee me a monthly income of $400.00 per month.

This he agreed to do and also agreed to deposit other securities with the Mississippi Valley Trust Company, with the privilege to change such securities from time to time, such deposit to be made to insure the performance of the obligation to me, as expressed in said agreement."

That the transaction was a pledge, rather than an assignment in trust, further appears from the stipulation of facts entered into between the parties in this cause. In such stipulation it is stated: "* * * When the agreement of May 12, 1909, (Exhibit B) was entered into between the parties, the securities mentioned in said Exhibit B, instead of the securities used under the 1908 agreement, were pledged to insure the performance of said May 12, 1909, agreement * * *".

■■ The word "pledge" has a well defined interpretation. Every contract by which possession of personal property, including choses in actions, is transferred only as security for debts, pre-existing debts and contingent liabilities, is generally deemed to be a pledge. In a pledge of personal property the pledgor retains his title to that property and the pledgee receives only a special property in that property with power to retain it until the debt is paid or the obligation is performed. City Bank Farmers' Trust Co. v. Bowers, D.C.S.D., N.Y., 2 F.Supp. 883; In re Rogers, D.C.N. D.,W.Va., 20 F.Supp. 120; In re Pittman, D.C.E.D.,N.C., 275 F. 681, 683; Vanstone v. Goodwin, 42 Mo.App. 39; Tennent v. Insurance Co., 133 Mo.App. 345, 112 S.W. 754.

■ A pledge is to be distinguished from an assignment in trust of personal property in that the transfer of possession but not of title is necessary to a pledge, and transfer of title but not of possession is essential to an assignment in trust. National Bank of Commerce v. Allen, 8 Cir., 90 F. 545, 552; In re Pittman, D.C.E.D.,N.C., 275 F. 681; Williams v. Rorer, 7 Mo. 556; Vanstone v. Goodwin, 42 Mo.App. 39; Young v. Mercantile Trust Co., C.C.S.D., N.Y., 140 F. 61, affirmed 2 Cir., 145 F. 39.

The evidence in this case establishes that there was no transfer of title to the securities in question to the Mississippi Valley Trust Company, but the petitioner could, and the testimony shows the petitioner did, substitute at will other securities for the securities originally pledged by him. Further substantiation of respondent's position that the petitioner by the pre-divorce agreement of May 12, 1909, did not make an assignment in trust of the securities in question for the benefit of his wife is found in the petitioner's own testimony. He testified, "From that time on (1928) I paid her out of the dividends I received, and I deducted the $4800.00 from the total amount received as expense." There is nothing in the record to show that the source of the $400 per month which petitioner agreed to pay his wife was to be the dividends from these securities, or that the $4,800 involved in the case at bar was derived from that source.

■ Petitioner contends that under the laws of the State of Missouri a divorced wife is not entitled to any alimony under any circumstances. We are not concerned with that proposition, for it is not in point. A married woman, under the laws of the State of Missouri, Section 2998, Missouri Revised Statutes 1929, Mo.St.Ann. § 2998, p. 5055, and Section 1355, Missouri Revised Statutes 1929, Mo.St.Ann. § 1355, p. 1564 (the provisions of which were a part of the law of the State of Missouri prior to 1909, the year of the pre-divorce agreement), has the legal right to make an agreement for a property settlement before the trial of a divorce suit, including the amount of compensation to be paid as alimony and the release of her inchoate right of dower. It is well established that such agreement will be enforced against the husband. Crenshaw v. Crenshaw, 276 Mo. 471, 208 S.W. 249; North v. North, 339 Mo. 1226, 100 S. W.2d 582, 109 A.L.R. 1061; Rhoads v. Rhoads, 342 Mo. 934, 119 S.W.2d 247; Schmieding v. Doellner, 10 Mo.App. 373; Gilsey v. Gilsey, 195 Mo.App. 407, 193 S.W. 858; Westfall v. Westfall, 208 Mo.App. 656, 236 S.W. 393; Young v. Thompson, 220 Mo.App. 1266, 290 S.W. 85.

Viewing the facts in the case at bar in the light of the foregoing authorities it is obvious that the petitioner, by reason of the pre-divorce agreement of May 12, 1909, was under a legal liability to pay his former wife $400 per month during her natural life, even though the divorce was obtained "for the fault of the said Corinne L. Tilles", or she subsequently remarried.

There was a continuing obligation on the part of the petitioner to pay $400 per month out of his income. The payment of this sum was secured by the pledge of the securities in question. This obligation was not fully and finally discharged by the delivery of the securities in pledge to the Mississippi Valley Trust Company. Upon

the fulfillment of the terms of the pledge the securities were to be returned to the petitioner.

The pre-divorce agreement of May 12, 1909, created a continuing, legal and contractual obligation on the part of the petitioner. This continuing, legal and contractual obligation was in effect during 1931. Under the principles laid down in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391, the $4,800 used by the petitioner to satisfy that obligation during that year is taxable to him.

The decision of the Board of Tax Appeals should be affirmed, and it is so ordered.