GENE G. SMITH, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Smith v. Commissioner
Docket No. 25373-81.
United States Tax Court
T.C. Memo 1985-366; 1985 Tax Ct. Memo LEXIS 276; 50 T.C.M. (CCH) 492; T.C.M. (RIA) 85366; July 22, 1985. *276 Held, S's rental of an A-frame house constituted an activity "not engaged in for profit" within the meaning of section 183. Held further, S is not entitled to claim travel expenses in excess of $646.64 for 1978. Held further, S is not entitled to claim a charitable contribution deduction in excess of $85.40 for 1978. Held further, S is not entitled to claim exemptions for three children from a previous marriage in 1978. Gene G. Smith, pro se. Anne W. Durning, for the respondent. NIMS
MEMORANDUM *280 FINDINGS OF FACT AND OPINION NIMS, Judge: Respondent determined a deficiency of $2,936 in petitioner's 1978 Federal income tax. After concessions, the issues for decision are: 1) whether petitioner's rental of an A-frame house constituted an activity "not engaged in for profit" within the meaning of section 183; [1] 2) whether petitioner is entitled to claim travel expenses in excess of $646.64 for 1978; 3) whether petitioner is entitled to claim a charitable contribution deduction in excess of $85.40 for 1978; and 4) whether petitioner is entitled to claim exemptions for more than three dependent children in 1978. For reasons of convenience, we have combined our findings of fact and opinion with respect to each issue. Some of the facts have been stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner Gene G. Smith resided in Tucson, Arizona, at the time his petition was filed. Issue 1. *281 Deduction of Rental Expenses
In 1973, petitioner constructed an A-frame house on 10 acres of land located in Tucson, Arizona. Because the house contained no plumbing and had no access to running water, petitioner transported water 34 miles round trip daily. Petitioner estimated that he incurred expenses of approximately $75 to $150 per month to transport water. Petitioner lived in the A-frame house for two to three years. He subsequently moved into a mobile home located on the same 10 acres of land as the A-frame house. After he moved into the mobile home, petitioner allowed various people to stay in the A-frame rent-free. Petitioner and the A-frame tenants shared the transported water. Beginning in 1978, petitioner charged rent of $80 per month for the A-frame. In that year, petitioner borrowed $20,000 from Pueblo Equity to make improvements to the house, including the installation of plumbing and a well. Prior to completion of the well in September, 1978, petitioner waived the rent payment in exchange for tenants hauling water to the property. During the first six months of 1978, Sam Mertz (Sam), a traveling evangelist of the Branham Tabernacle, lived in petitioner's *282 A-frame house. Petitioner collected no rent from Sam. From July, 1978 to September, 1979, Tom Kardum (Tom), also a traveling evangelist of the Branham Tabernacle, lived in petitioner's house. During this period, Tom paid petitioner rent of $300 to $400. During 1978, petitioner made "charitable contributions" to Sam and Tom totalling $1,211. On his 1978 Federal income tax return, petitioner reported gross rental income of $20. On that return, petitioner claimed the following expenses in connection with the rental of the A-frame house: depreciation -- $1,153, insurance -- $670, interest -- $4,149 and taxes and licenses -- $365. In the notice of deficiency, respondent determined that petitioner's rental of the A-frame house constituted an activity "not engaged in for profit" within the meaning of section 183. Respondent therefore disallowed all expenses petitioner claimed in connection with the rental of the A-frame. On brief, respondent concedes that petitioner is entitled to deduct property taxes in the amount of $146.71 under section 183(b)(1). Petitioner argues that he engaged in the rental of his house with the primary purpose and objective of making a profit. Petitioner *283 therefore concludes that he is entitled to deduct all ordinary and necessary expenses incurred in connection with the rental of the property. On the record before us, we agree with respondent. A taxpayer must engage in an activity with the primary purpose and objective of making a profit in order to fully deduct expenses under either section 162 or section 212. Golanty v. Commissioner,72 T.C. 411, 425 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981). "While a reasonable expectation of profit is not required, the taxpayer's profit objective must be bona fide." Fox v. Commissioner,80 T.C. 972, 1006 (1983), affd. by order 742 F.2d 1441 (2d Cir., Jan. 23, 1984), affd. without published opinion sub nom. Barnard v. Commissioner,731 F.2d 230 (4th Cir., April 5, 1984), affd. without published opinion sub nom. Kratsa v. Commissioner,734 F.2d 6 (3d Cir. Apr. 16, 1984), aff. without published opinion sub nom. Hook v. Commissioner,734 F.2d 5 (3d Cir., Apr. 16, 1984), *284 affd. without published opinion sub nom. Leffel v. Commissioner,734 F.2d 6 (3d Cir., Apr. 16, 1984), affd. without published opinion sub nom. Zemel v. Commissioner,734 F.2d 9 (3d Cir., Apr. 16, 1984); Dreicer v. Commissioner,78 T.C. 642, 644-645 (1982), affd. without opinion 702 F.2d 1205 (D.C. Cir. 1983). Section 183 allows deductions for ordinary and necessary expenses arising from an activity not engaged in for profit only to the extent of gross income derived from such activity, less the amount of those deductions which are allowable regardless of whether or not the activity is engaged in for profit. [2]Section 183(c) defines an "activity not engaged in for profit" as an activity other than one for which deductions are allowable under section 162 or section 212(1) or (2). *285 The issue of whether a taxpayer engages in an activity with the requisite objective of making a profit is one of fact to be resolved on the basis of all the facts and circumstances. Lemmen v. Commissioner,77 T.C. 1326, 1340 (1981). The burden of proving the requisite intention is on petitioners. Sabelis v. Commissioner,37 T.C. 1058, 1062 (1962); Rule 142(a). Although section 1.183-2(b), Income Tax Regs., lists some of the relevant factors to be considered in determining whether an activity is "not engaged in for profit," these factors are more relevant to farming and hobbies than rental property. See Jasionowski v. Commissioner,66 T.C. 312, 321 n.6 (1976). We therefore do not find the enumerated factors particularly helpful in the instant case. Nevertheless, after a careful review of all the facts and circumstances before us, we find that petitioner has failed to satisfy his burden of proving that he possessed the requisite profit-making objective. The record contains no evidence supporting petitioner's *286 contention that he intended to make a profit from the rental of the A-frame house. Prior to 1978, petitioner allowed various people to live in the A-frame rent-free. Although petitioner charged rent of $80 per month in 1978, he only collected rent of $20 during that year. Even if petitioner's tenants had paid the agreed upon rent, rental expenses would have exceeded rental income by $5,377 in 1978. We are convinced that petitioner maintained the A-frame primarily to provide inexpensive housing for traveling evangelists. During 1978, petitioner rented the house to Sam Mertz and Tom Kardum, both traveling evangelists of the Branham Tabernacle. In addition to allowing Sam and Tom to live in the A-frame almost rent-free, petitioner made "charitable contributions" of $1,211 to them in 1978. Petitioner's desire to help traveling evangelists, "while no doubt laudatory, should not be confused with an intention to make a profit." Jasionowski v. Commissioner,supra, at 322. We are unpersuaded by petitioner's argument that the addition of plumbing and running water to the property in September, 1978, evidences his intention of making a profit. Although petitioner *287 increased the rent to $150 on October 1, 1979, as a result of the improvements made to the property, this increase occurred more than one year following the completion of the various improvements. Moreover, assuming petitioner's 1978 rental expenses were representative of yearly expenses, petitioner would incur in subsequent years rental expenses more than three times as large as yearly rental income despite the rent increase. Accordingly, we find that petitioner's rental activity was not engaged in for profit within the meaning of section 183. Because petitioner failed to substantiate deductible expenses in excess of $146.17 under section 183(b), respondent is sustained on this issue. Issue 2. Employee Business Expenses
During 1978, petitioner worked out of Local Union 570 of the International Brotherhood of Electrical Workers as an electrician. From July 12, 1978, to May 29, 1979, petitioner worked on a temporary basis for Foley Electric Company (Foley) on a job-site in Cochise, Arizona. The Foley job-site was located approximately 108 miles from petitioner's mobile home in Tucson, Arizona. In August, 1978, petitioner moved his mobile home to a trailer park near the *288 Foley job-site. Petitioner worked for Gordon Engineering (Gordon) from February 8, 1977, to June 26, 1978. The Gordon job-site was located approximately 27 miles from petitioner's mobile home in Tucscon, Arizona. At the time he began working for Gordon, petitioner was told the Gordon job would last approximately nine months. On his 1978 Federal income tax return, petitioner claimed the following travel expenses incurred in connection with the Foley job: automobile -- $443, lodging -- $480 and meals -- $1,560. Petitioner did not claim the travel expenses he incurred in connection with the Gordon job on his 1978 Federal income tax return. Petitioner now claims, however, that he incurred deductible travel expenses, including meals and lodging, of $1,000 while working for Gordon. In the notice of deficiency, respondent disallowed all but $343 of the claimed expenses. At trial, petitioner offered the following evidence to substantiate his travel expenses: receipts for automobile expenses totalling $481.69, cancelled checks payable to Farmer's Insurance Company totalling $329.60, cancelled checks payable to TRICO (an electric company) totalling $302.64, a cancelled check payable *289 to Sunsites Mobile Park in the amount of $61.80 and receipts totalling $180 for additional amounts paid to Sunsites Mobile Park. Respondent stipulated that petitioner is entitled to claim the following travel expenses incurred in connection with the Foley job: automobile -- $17.51, meals -- $143.73 and lodging -- $485.40. Respondent contends, however, that petitioner has failed to substantiate travel expenses in excess of these amounts. We agree. Section 162(a) allows a taxpayer to deduct all ordinary and necessary business expenses paid or incurred during the taxable year, including travel expenses incurred while away from home. A deduction for travel expenses, however, is subject to the specific substantiation requirements contained in section 274(d). Section 274(d) requires petitioner to substantiate the amount of the expense, the time and place of travel and the business purpose of the expense by adequate records or by sufficient evidence corroborating his own statement. "Adequate records" are defined as "an account book, diary, statement of expense or similar record * * * and *290 documentary evidence * * * which, in combination, are sufficient to establish each element of an expenditure * * *." Section 1.274-5(c)(2), Income Tax Regs. The regulations further provide that the substantiation requirements of section 274(d) supersede the rule of Cohan v. Commissioner,39 F.2d 540 (2d Cir. 1930), which allowed the courts to estimate the amount of travel expenses when the evidence indicated that a taxpayer had incurred deductible travel expenses but the exact amount could not be determined. Section 1.274-5(a), Income Tax Regs.
Petitioner submitted numerous receipts and cancelled checks at trial as evidence of his travel expenses. This evidence, however, standing alone, is insufficient to satisfy the substantiation requirements of section 274. Rigorous though it may be, the requirements in the regulation must be met that there be an account book, diary or the like in combination with adequate other documentation, or substantiation by other sufficient evidence (see section 1.274-5(c)(3), Income Tax Regs.), and it is not within our discretion to modify the requirements. *291 Petitioner did not produce such documentation or sufficient evidence corroborating his own statement. We therefore find that petitioner is not entitled to claim travel expenses in excess of the amounts allowed by respondent. Issue 3. Charitable Contribution Deduction
On his 1978 Federal income tax return, petitioner claimed a charitable contribution deduction of $3,902. In the notice of deficiency, respondent determined that petitioner had not satisfied the requirements of section 170 and therefore disallowed the entire charitable contribution deduction. At trial, petitioner submitted the following cancelled checks to support his charitable contribution deduction: Check(s) Payable To
Amount
Reverend Sam Mertz
$ 651.00
Reverend Anthony Milano
736.00
Reverend Ben Bryant
868.00
Reverend Tom Kardum
560.00
Reverend Fred Barker
17.00
Reverend G. D. Martin
17.00
Salvation Army
10.40
Family Life Radio
7.00
Country Rose Tabernacle
17.00
Tabernaculo Emanuel
17.00
Tucson Tabernacle
17.00
Northside Fellowship
17.00
$2,934.40
The first six payers listed above were traveling missionaries and evangelists who followed the beliefs of *292 William Marrion Branham. Respondent concedes that petitioner is entitled to claim a charitable contribution deduction of $85.40 for amounts contributed to certain charitable organizations during 1978. Respondent contends, however, that petitioner is not entitled to deduct contributions totalling $2,849 made to certain traveling evangelists during the year in issue. We agree. For the donor to be entitled to deduct a charitable contribution under section 170, the donee must be one of the organizations described in section 170(c).[3] See, e.g., Peace v. Commissioner,43 T.C. 1 (1964). Charitable contributions are not deductible if they are made to individuals rather than to qualified organizations. See Tilles v. Commissioner,38 B.T.A. 545, 549-551 (1938), affd. 113 F.2d 907 (8th Cir. 1940), cert. denied 311 U.S. 703 (1940). Petitioner does not allege nor does the record contain evidence that petitioner made contributions to the evangelists as agents of a qualified organization. See Morey v. Riddell,205 F. Supp. 918 (S.D. Cal. 1962). *293 Accordingly, we find that petitioner's contributions totalling $2,849 were not made "to or for the use of" a qualified organization as defined in section 170(c). Respondent's determination is therefore sustained. *294 Issue 4. Dependency Exemptions
On his 1978 Federal income tax return, petitioner claimed exemptions for three dependent children named Patricia, Adam and Abel. Petitioner, however, did not claim exemptions for Sam, Shannon and Carol, petitioner's children from a previous marriage. Petitioner now argues that he is entitled to claim three additional dependency exemptions in 1978 for Sam, Shannon and Carol. Under section 151(e)(1), a taxpayer may claim a $750 exemption for each dependent child. A taxpayer's child constitutes a "dependent" if the child receives more than one-half of his support for the calendar year in which the taxable year of the taxpayer begins from the taxpayer. Section 152(a)(1). Petitioner bears the burden of proving the source and amount of support. Rule 142(a). Section 152(e) provides special rules for determining who is entitled to claim an exemption for a dependent child in the context of divorced parents. If a child receives more than one-half of his support *295 during the calendar year from his divorced parents, the custodial parent is generally treated as having provided more than one-half of the child's support. Section 152(e)(1). The noncustodial parent, however, will be treated as having provided more than one-half of the child's support if: 1) the divorce decree or a written agreement between the parents provides that the noncustodial parent is entitled to claim the exemption for such child and the noncustodial parent provides at least $600 for the support of such child during the calendar year, section 152(e)(2)(A), or 2) the noncustodial parent contributed at least $1,200 for the support of such child and the custodial parent cannot establish that he provided more for the support of such child during the calendar year than the noncustodial parent. Section 152(e)(2)(B). The only evidence supporting petitioner's contention that he is entitled to claim exemptions for three dependent children from a previous marriage is his statement at trial that he "took care of them 75 percent of the time." In the absence of corroborating evidence, however, this statement is insufficient to satisfy petitioner's burden of proving that he is entitled *296 to claim these children as dependents under section 151(e). We therefore find that petitioner is not entitled to claim more than three dependency exemptions for 1978. To reflect the foregoing and prior concessions, Decision will be entered under Rule 155.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 in effect for the year in issue. All rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Section 183 reads as follows: (a) GENERAL RULE.--In the case of an activity engaged in by an individual or an S corporation, if such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- (1) the deductions which would be allowable under this chapter for the taxable year without regard to whether or not such activity is engaged in for profit, and (2) a deduction equal to the amount of the deductions which would be allowable under this chapter for the taxable year only if such activity were engaged in for profit, but only to the extent that the gross income derived from such activity for the taxable year exceeds the deductions allowable by reason of paragraph (1). (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. (d) PRESUMPTION.--If the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. In the case of an activity which consists in major part to the breeding, training, showing, or racing of horses, the preceding sentence shall be applied by substituting the period of 7 consecutive taxable years for the period of 5 consecutive taxable years.↩
3. Section 170(c) provides: (c) CHARITABLE CONTRIBUTION DEFINED.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; and (D) which is not disqualified for tax exemption under section 501(c)(3) by reason of attempting to influence legislation, and which does not participate in, or intervene in (including the publishing or distributing of statements), any political campaign on behalf of any candidate for public office. A contribution or gift by a corporation to a trust, chest, fund, or foundation shall be deductible by reason of this paragraph only if it is to be used within the United States or any of its possessions exclusively for purposes specified in subparagraph (B). Rules similar to the rules of section 501(j) shall apply for purposes of this paragraph. (3) A post or organization of war veterans, or an auxiliary unit or society of, or trust or foundation for, any such post or organization-- (A) organized in the United States or any of its possessions, and (B) no part of the net earnings of which inures to the benefit of any private shareholder or individual. (4) In the case of a contribution or gift by an individual, a domestic fraternal society, order, or association, operating under the lodge system, but only if such contribution or gift is to be used exclusively for religious, charitable, scientific, literary, or educational purposes, or for the prevention of cruelty to children or animals. (5) A cemetery company owned and operated exclusively for the benefit of its members, or any corporation chartered solely for burial purposes as a cemetery corporation and not permitted by its charter to engage in any business not necessarily incident to that purpose, if such company or corporation is not operated for profit and no part of the net earnings of such company or corporation inures to the benefit of any private shareholder or individual. For purposes of this section, the term "charitable contribution" also means an amount treated under subsection (g) as paid for the use of an organization described in paragraph (2), (3), or (4).↩